*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0257p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

JOHN JOSEPH DUANE,

        *Defendant-Appellant.*

No. 06-6536

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 06-00013—Charles R. Simpson III, District Judge.

Argued: November 27, 2007

Decided and Filed: July 17, 2008

Before: BOGGS, Chief Judge; GIBBONS, Circuit Judge; BELL, Chief District Judge.[*]

_____

## COUNSEL

**ARGUED:** Henry Louis Sirkin, SIRKIN, PINALES & SCHWARTZ, Cincinnati, Ohio, for Appellant. Madison T. Sewell, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee. **ON BRIEF:** Henry Louis Sirkin, Jennifer M. Kinsley, Scott Ryan Nazzarine, SIRKIN, PINALES & SCHWARTZ, Cincinnati, Ohio, for Appellant. Terry M. Cushing, Monica Wheatley, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

_____

## OPINION

_____

JULIA SMITH GIBBONS, Circuit Judge. John Joseph Duane appeals his sentence for receiving and possessing child pornography in violation of 18 U.S.C. § 2252(a)(2) and (a)(4). Duane contends that: (1) calculating his sentence using the 2005 Sentencing Guidelines violated the *Ex Post Facto* Clause; (2) the district court erred in enhancing Duane's sentence pursuant to U.S.S.G. § 2G2.2(b)(4) for receiving and possessing sadistic images; and (3) his sentence is unreasonable. For the following reasons, we affirm.

---

[*]The Honorable Robert Holmes Bell, Chief United States District Judge for the Western District of Michigan, sitting by designation.

**I.**

On November 10, 2005, federal agents lawfully obtained Duane's computer. The agents found 3,728 images of child erotica, 674 images of child pornography, and 15 images of sadistic child pornography. Duane eventually pled guilty to receiving child pornography in violation of 18 U.S.C. § 2252(a)(2) arising out of internet transactions that occurred on March 15 and April 12, 2003, and possessing child pornography in violation of § 2252(a)(4) based on images that remained on his computer when it was obtained on November 10, 2005.

Using the 2005 Sentencing Guidelines, the Presentence Investigation Report ("PSR") calculated Duane's base offense level as 22 pursuant to U.S.S.G. § 2G2.2(a)(2). This calculation accounted for receiving child pornography pursuant to 18 U.S.C. § 2252(a)(2). The PSR then added two levels because some material involved a prepubescent minor; added four levels because the offense involved materials that portrayed sadistic conduct; added two levels because the offense involved the use of a computer; added five levels because the offense involved more than 600 images; subtracted two levels because Duane had no intent to traffic in child pornography; and subtracted three levels because Duane accepted responsibility. All told, the PSR recommended an adjusted offense level of 30. Given Duane's criminal history category I, this resulted in a Guidelines range of 97-121 months.

Duane filed a Sentencing Memorandum with the district court, objecting to the use of the 2005 Guidelines and to the § 2G2.2(b)(2) sadistic image enhancement. Duane also argued that he should be sentenced below the Guidelines range because: (1) he had zero criminal history points; (2) the majority of images on his computer consisted of child erotica, not pornography; (3) he was 57 years old, yet had no history of previous sexual misconduct; (4) he did not touch any children and was not at risk to do so in the future; and (5) he was amenable to treatment.

At the sentencing hearing, the district court overruled Duane's objections to the use of the 2005 Guidelines and to the § 2G2.2(b)(2) enhancement. First, citing *United States v. Barton*, 455 F.3d 649, 655 n.4 (6th Cir. 2006), it determined that calculating Duane's Guidelines range using the 2005 Guidelines did not implicate the *Ex Post Facto* Clause because the Guidelines "inform . . . but do not control" the court's sentence. Second, it determined that the § 2G2.2(b)(2) enhancement for possessing sadistic images was appropriate regardless of the number of images Duane possessed or whether he intended to possess these images.

Duane's expert witness, Dr. Breeding, testified that Duane was not at risk for committing bodily contact sex offenses but was likely to remain involved with pornography. He also testified that Duane would be amenable to treatment for "sexual addiction," recommended a two-year program, and opined that there would not be any clinical benefit to a longer period of incarceration.

Before announcing Duane's sentence, the district court noted that

> in looking at the 3553(a) factors, we're counseled to consider the nature and circumstances of the offense, certainly other things, the history and characteristics of the defendant, and the other factors. The sentence needs to reflect the seriousness of the offense and provide deterrence, protect the public.

The district court then emphasized the seriousness of Duane's crime and that it was "not because the defendant . . . has ever acted out the things that are portrayed on some of these pictures or that he has tried to contact or molest a child . . . ." Instead, the crime was serious because it involved "little children," and "there is a market for this stuff because people like Mr. Duane acquire it, and that market drives victimization of these children." The court acknowledged that the images ranged from "masochistic portrayals of deviancy" to "so-called erotica[,]" but noted that "even [the latter] is a terrible victimization . . . ." In addition, the district court added that "[d]eterrence should be part

of the sentencing factor here," given that child pornography is produced "for the gratification and purchase by Mr. Duane and unfortunately others." The district court also recognized that it was "obliged to consider" the recommended Guidelines range, and that "[t]here's no doubt that Mr. Duane needs treatment and assistance while serving this sentence so that he does not re-offend, and I believe that that will be provided for him."

The court eventually sentenced Duane to 97 months of imprisonment, explaining that this sentence was "sufficient given Mr. Duane's age to make certain that he is not further involved in this disgusting business," and "sufficient to meet sentencing objectives of punishment, incapacitation, [and] general deterrence."

Before adjourning the hearing, the district court initiated the following dialogue with Ms. Lawless (the government's attorney) and Ms. Wyrosdick (Duane's attorney):

Court: Are there any objections that I haven't heard to this sentence, Ms. Lawless?

Ms. Lawless: Not for the United States, Your Honor.

The Court: Ms. Wyrosdick?

Ms. Wyrosdick: No, sir.

The Court: All right. Then that sentence announced will be imposed.

## II.

Duane first contends that calculating his Guidelines range using the 2005 Guidelines violated the *Ex Post Facto* Clause of the Constitution because two of the three offenses he was sentenced for occurred prior to the enactment of the 2005 Guidelines. Duane received child pornography in violation of 18 U.S.C. § 2252(a)(2) on two occasions in 2003. He continued to possess child pornography in violation of § 2252(a)(4) on November 10, 2005, after the 2005 Guidelines had gone into effect November 1, 2005. Using the 2005 Guidelines, the PSR calculated Duane's base offense level as 22 and applied a five-level enhancement, pursuant to U.S.S.G. § 2G2.2(b)(7)(D), because the offense involved more than 600 images. Under the 2002 Guidelines in effect when Duane received the images, Duane's base offense level would have been 17, and would not have been enhanced based on the number of images he possessed. *See* U.S.S.G. § 2G2.2 (2002). Duane argues that this retroactive application of the 2005 Guidelines violated the *Ex Post Facto* Clause. Again, the district court determined, based on *United States v. Barton*, 455 F.3d 649, 655 n.4 (6th Cir. 2006), that the *Ex Post Facto* Clause was not implicated because the advisory Guidelines "inform . . . but do not control" the court's sentencing determination.

*Ex post facto* challenges present questions of law that the court reviews *de novo*. *United States v. VanHoose,* 437 F.3d 497, 500 (6th Cir. 2006). The *Ex Post Facto* Clause "forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham,* 450 U.S. 24, 30 (1981); *see also Collins v. Youngblood,* 497 U.S. 37, 42 (1990) ("[A]ny statute which . . . makes more burdensome the punishment for a crime, after its commission, is prohibited as *ex post facto*.") (internal citation and quotation marks omitted). The purpose of the clause is to protect citizens against a "lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver*, 450 U.S. at 30.

Resolving Duane's claim potentially involves two distinct constitutional inquiries: (1) whether the retroactive use of a revised version of the Guidelines implicates the *Ex Post Facto* Clause now that the Guidelines are advisory post-*Booker*; and (2) if so, whether the application of

U.S.S.G. § 1B1.11(b)(3)—under which a revised version of the Guidelines is used if a defendant is convicted of offenses occurring before and after that version became effective—violates the *Ex Post Facto* Clause. We address each issue in turn.

**A.**

The first issue is whether a change to the Guidelines even implicates the *Ex Post Facto* Clause. Prior to *United States v. Booker*, 543 U.S. 220 (2005), this court held that "where Congressional revision of the . . . Guidelines 'changes the legal consequences of acts completed before its effective date' to the detriment of the convict," to satisfy *ex post facto* concerns, "the Guidelines in effect at the time of the criminal act must be applied." *United States v. Kussmaul,* 987 F.2d 345, 351-52 (6th Cir. 1993) (quoting in part *Miller v. Florida,* 482 U.S. 423, 431(1987)). Therefore, at least prior to *Booker*, the use of a revised version of the Guidelines assigning a greater base offense level to a defendant's conduct than would have applied using the Guidelines in effect at the time of a defendant's offense violated the *Ex Post Facto* Clause. *Id.* at 352.

Following *Booker*, this court has not directly addressed whether a change to the Guidelines implicates the *Ex Post Facto* Clause. In *United States v. Barton*, 455 F.3d 649 (6th Cir. 2006), we examined a slightly different issue. In that case, Barton pled guilty before *Booker* but was given an above-Guidelines sentence following *Booker*. *Id.* at 650-52. Barton argued that the retroactive application of the *Booker* decision, which gave the district court discretion to sentence Barton above the Guidelines range, violated the *Ex Post Facto* Clause as applied to judicial decisions through the Due Process Clause. *Id.* at 652. The *Barton* court concluded that applying *Booker* retroactively did not violate the Due Process Clause. *Id.* at 657.

In a footnote, the *Barton* court also distinguished the "ex post facto-type due process concerns" implicated by applying *Booker* retroactively from the *Ex Post Facto* Clause problem— identified in *Kussmaul*—of retroactively applying mandatory Guidelines. *Id.* at 655 n.4. Because mandatory Guidelines operated similarly to a statute, the retroactive application of new Guidelines directly implicated the *Ex Post Facto* Clause and the need to restrict arbitrary or vindictive legislative acts. *Id.* But, we noted, the *Ex Post Facto* Clause itself is applied "in a more stringent fashion" than "the ex post facto aspect of the Due Process Clause" implicated by retroactive application of *Booker* discretion. *Id.* As we explained:

> Now that the Guidelines are advisory, the Guidelines calculation provides no such guarantee of an increased sentence, which means that the Guidelines are no longer akin to statutes in their authoritativeness. As such, the Ex Post Facto Clause itself is not implicated. Thus, the dual concerns of notice and the need to prevent arbitrary or vindictive legislative acts present in our earlier cases are no longer present in the same way they were when we analyzed changes to the Guidelines under the Ex Post Facto Clause.

*Id.* Overall, we concluded that the retroactive application of *Booker* did not violate the Due Process Clause for two reasons. First, notice concerns were "minimized" in *Barton* because the new prospect of an above-Guidelines sentence following *Booker* would have been unlikely to change Barton's conduct. *Id.* at 655-56. Second, in any event, the *Booker* decision was not "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," *id*. at 654 (quoting *Rogers v. Tennessee*, 532 U.S. 451, 457 (2001)).

Although we recognize that some language from the above quoted *Barton* footnote could be read to suggest that a change to the Guidelines does not raise an *ex post facto* concern, we decline to read *Barton* as announcing such a broad rule. After all, *Barton* was concerned with retroactively

applying *Booker*—a judicial decision—rather than a new version of the Guidelines.[1] As the *Barton* opinion noted, these inquiries are somewhat different. Moreover, following *Barton* this court has continued to examine the *ex post facto* implications of applying a revised version of the Guidelines retroactively. *See United States v. Jeross*, 521 F.3d 562, 572-73 (6th Cir. 2008) (suggesting that a version of the Guidelines taking effect after the defendant committed an offense could only be applied if doing so would not result in a higher Guidelines range). Finally, such an approach is somewhat inconsistent with our recognition—in the context of parole guidelines—that "the [Supreme Court has] made clear that guidelines that affect discretion, rather than mandate outcomes, are nevertheless subject to ex post facto scrutiny: 'The presence of discretion does not displace the protections of the Ex Post Facto Clause.'" *See Michael v. Ghee*, 498 F.3d 372, 382 (6th Cir. 2007) (quoting in part *Garner v. Jones*, 529 U.S. 244, 253 (2000)).

For these reasons, we assume *arguendo* that a retroactive change to the Guidelines could implicate the *Ex Post Facto* Clause. We therefore address whether U.S.S.G. § 1B1.11(b)(3) violates the *Ex Post Facto* Clause.

**B.**

Guidelines policy statements provide that a sentencing court must apply the version of the Guidelines in effect at the time of sentencing unless doing so would violate the *Ex Post Facto* Clause. U.S.S.G. § 1B1.11(a), (b)(1). In addition, "[t]he Guidelines Manual in effect on a particular date shall be applied in its entirety." *Id.* § 1B1.11(b)(2). Under this "one book rule," courts "shall not apply, for example, one guideline section from one edition of the Guidelines Manual and another guideline section from another edition of the Guidelines Manual." *Id.* If a defendant is convicted of two offenses occurring both before and after a revised version of the Guidelines became effective, § 1B1.11(b)(3) provides that the revised version of the Guidelines is to be applied to both offenses. In this case, Duane was convicted of offenses that occurred before and after the 2005 Guidelines became effective. Pursuant to § 1B1.11(b)(3), the district court used the revised 2005 version of the Guidelines to determine Duane's Guidelines range for all three offenses. Although we have not previously had occasion to directly address this issue in a published decision, we now conclude that § 1B1.11(b)(3)—at least as applied in this case—does not violate the *Ex Post Facto* Clause.

"Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver,* 450 U.S. at 30. Recognizing this principle, the majority of circuit courts considering the issue—before and after *Booker*—have concluded that §1B1.11(b)(3) does not create an *ex post facto* problem. *See United States v. Foote*, 413 F.3d 1240, 1249 n.5 (10th Cir. 2006) (citing *United States v. Sullivan*, 255 F.3d 1256, 1259-63 (10th Cir. 2001)); *United States v. Lewis*, 235 F.3d 215, 217-18 (4th Cir. 2000); *United States v. Vivit*, 214 F.3d 908, 919 (7th Cir. 2000); *United States v. Kimler*, 167 F.3d

---

[1]Addressing the *ex post facto* implications of applying revised Guidelines retroactively, the Seventh Circuit has concluded that "the ex post facto clause should apply only to laws and regulations that bind rather than advise." *United States v. Demaree*, 459 F.3d 791, 795 (7th Cir. 2006), *cert. denied*, 127 S. Ct. 3055 (2007). But a number of other circuits have continued, post-*Booker*, to analyze whether applying revised Guidelines retroactively violates the *Ex Post Facto* Clause. *See United States v. Rodarte-Vasquez*, 488 F.3d 316, 322-24 (5th Cir. 2007) (concluding that application of a revised version of the Guidelines that took effect after defendant committed offense "constituted an *ex post facto* violation" and that "under this [Post-*Booker*] advisory regime, a district court, is still required, as a first step in deciding on the requisite reasonable sentence, to calculate the applicable guidelines range"); *United States v. Carter*, 490 F.3d 641, 643 (8th Cir. 2007) (noting that following *Booker*, the Eight Circuit has still "recognized that retrospective application of the Guidelines implicates the *ex post facto* clause") (citation, quotation marks, and alteration omitted); *see also United States v. Gilman*, 478 F.3d 440, 449 (1st Cir. 2007) (recognizing *Demaree*, but noting that it "is doubtful" that the First Circuit would conclude that *Booker* eliminates *ex post facto* concerns).

889, 893-95 (5th Cir. 1999); *United States v. Bailey*, 123 F.3d 1381, 1402-07 (11th Cir. 1997); *United States v. Cooper*, 35 F.3d 1248, 1250-53 (8th Cir. 1994), *vacated,* 514 U.S. 1094 (1995), *reinstated without opinion,* 63 F.3d 761 (8th Cir. 1995); *see also United States v. Cruzado-Laureano*, 404 F.3d 470, 488 (1st Cir. 2005) (noting that defendant should be sentenced under revised version of Guidelines where offenses occurred both before and after the Guidelines were revised). These courts have generally concluded that a criminal who commits additional similar crimes following the enactment of revised Guidelines would have constructive notice (1) of the new Guidelines themselves, and (2) that pursuant to §1B1.11(b)(3) and the § 3D1.2(d) grouping rules, their sentence would be determined by the revised version of the Guidelines. As the Fourth Circuit explained:

> Section 1B1.11(b)(3) was added to the guidelines [in 1993]. [The defendant] therefore had ample warning, when she committed the later acts . . . that those acts would cause her sentence for the earlier crime to be determined in accordance with the Guidelines Manual applicable to the later offenses, and thus that the intervening amendment to [Guidelines] would apply.

*Lewis*, 235 F.3d at 218; *see also Cooper*, 35 F.3d at 1250 ("At the time [defendant] elected to commit the third firearms violation he was clearly on notice of the [Guidelines amendments] and the fact that they increased the offense levels for the firearms crimes in question."); *Kimler,* 167 F.3d at 895 ("[The defendant] had proper notice that, if he continued to commit related offenses that would be grouped under § 3D1.2(d), he would be sentenced under the guidelines in use when he committed the last offense in the grouped series."). According to this rationale, because a defendant is on notice that new Guidelines will apply to previous crimes if he commits additional crimes, the defendant is not disadvantaged by the amended Guidelines or § 1B1.11(b)(3), but by his "election to continue criminal activity after the . . . amendments became effective." *See Cooper*, 35 F.3d at 1250; *accord Lewis*, 235 F.3d at 218 ("[I]t was not § 1B1.11(b)(3) that disadvantaged [defendant], but rather her decision to commit further [offenses] after the effective date of the [revised] guidelines.").

Some courts have found further support in the Sentencing Commission's explanation for §1B1.11(b)(3). *See Sullivan*, 255 F.3d at 1263 (noting the Commission's recognition of the "anomaly" that could result if pre-amendment Guidelines were applied to all of a defendant's counts of conviction); *Cooper*, 35 F.3d at 1252 (same). The commentary to the Guidelines notes that because of the grouping rules and relevant conduct considerations, "a contrary conclusion would mean that [a defendant committing offenses before and after a revised version of the Guidelines became effective would be] subject to a lower guideline range than if convicted only of the second offense." *See* U.S.S.G. § 1B1.11(b)(3), cmt. background.

On the other hand, the Third and Ninth Circuits have concluded that §1B1.11(b)(3) does violate the *Ex Post Facto* Clause. *See United States v. Ortland*, 109 F.3d 539, 547 (9th Cir. 1997); *United States v. Bertoli*, 40 F.3d 1384, 1404 (3d Cir. 1994). These decisions primarily take issue with the Sentencing Commission's justification for § 1B1.11(b)(3). *See Ortland*, 109 F.3d at 547 ("The harm caused by the earlier offenses *can* be counted in sentencing the later one. That does not mean that the punishment for the earlier offenses themselves can be increased, simply because the punishment for the later one can be.") (internal citation omitted); *Bertoli*, 40 F.3d at 1404 ("The fact that various counts of an indictment are grouped cannot override *ex post facto* concerns."). But neither *Ortland* nor *Bertoli* persuasively address what to us seems the better argument in favor of §1B1.11(b)(3)'s constitutionality: that a Guidelines revision, §1B1.11(b)(3) itself, and the § 3D1.2(d) grouping rules provide a criminal fair warning that committing future similar crimes may subject him to increased penalties for similar prior offenses.

This court has not directly addressed this issue in a published decision. But our unpublished opinion in *United States v. Lacefield* is consistent with the majority of circuits that have concluded that defendants are on notice that committing additional similar offenses may cause their previous offenses to be sentenced under revised Guidelines. 146 F. App'x 15, 22 (6th Cir. 2005) ("[T]he grouping rules, enacted in 1987, provide warning to criminals that completing another criminal offense similar to one committed previously places them in peril of sentencing under a revised version of the Guidelines.") (quoting in part *Sullivan*, 255 F.3d at 1262-63). To be sure, in *Lacefield*, we concluded that there was an *ex post facto* violation based on the particular facts in that case. Lacefield committed two sets of offenses—one set before and one set after an amended version of the Guidelines had gone into effect. Both sets of offenses were consolidated for the purposes of the sentencing hearing even though the offenses had been charged in two separate indictments, prosecuted separately, and were not grouped together under § 3D1.2(d) for the purposes of sentencing. *Id.* at 22. To apply an amended version of the Guidelines to the earlier set of offenses under these circumstances—where the grouping rules did not provide Lacefield notice that his dissimilar offenses would be sentenced together under an amended version of the Guidelines—violated the *Ex Post Facto* Clause. *Id.* Those unique circumstances are not present in this case. Duane was sentenced for receiving child pornography in violation of 18 U.S.C. § 2252(a)(2) and possessing child pornography in violation of § 2252(a)(4). These similar offenses were grouped together pursuant to § 3D1.2(d).

We agree with the majority of circuits addressing the issue that where, as here, offenses grouped together for sentencing purposes were committed before and after an amended version of the Guidelines went into effect, the use of the amended version of the Guidelines does not violate the *Ex Post Facto* Clause. Therefore, the application of §1B1.11(b)(3) in this case presented no *ex post facto* problem. After receiving child pornography on two occasions in 2003, Duane continued to possess child pornography, in violation of § 2252(a)(4), following the enactment of the 2005 Guidelines. Section 1B1.11(b)(3), enacted in 1993, and the grouping rules, enacted in 1987, provided Duane constructive notice that this continued possession of child pornography would make the 2005 Guidelines applicable to all such related trafficking and possession offenses. Thus Duane had fair warning that continuing to possess the child images would subject him to a greater Guidelines range and to a five-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(7)(D) (2005).

### III.

Duane next asserts that the district court erred in enhancing his sentence pursuant to U.S.S.G. § 2G2.2 (b)(4) for receiving and possessing sadistic images.[2]

### A.

This court reviews a district court's interpretation of the Guidelines *de novo*, and the district court's findings of fact for clear error. *United States v. Kozinski* 480 F.3d 769, 774 (6th Cir. 2007) (citation omitted). We defer to the district court's application of the Guidelines to the facts. *Id.* (citing *United States v. Charles*, 138 F.3d 257, 266 (6th Cir. 1998)).

### B.

U.S.S.G. § 2G2.2(b)(4) provides a four-level enhancement "[i]f the offense involved material that portrays sadistic . . . conduct." Duane first argues that the enhancement was inappropriate because few (15) of the many (over 4,000) total images were sadistic, and because the small number

---

[2]In the alternative, Duane argues that the district court should have considered the relatively small number of sadistic images in determining his overall sentence. As discussed in Part IV, the district court did consider the types of images Duane possessed, and we conclude that its explanation and the length of the sentence were both reasonable.

suggests that Duane did not intend to possess the images. But even Duane concedes that the district court did not err as a matter of law. The commentary to § 2G2.2(b)(4) explicitly provides that whether a defendant *intended* to possess sadistic images is irrelevant. U.S.S.G. § 2G2.2, cmt. n. 2. Nor does § 2G2.2(b)(4) specify that its application is contingent upon any particular number of sadistic images or percentage of sadistic images in relation to other prohibited images. *See United States v. Stulock,* 308 F.3d 922, 926 (8th Cir. 2002) (upholding four-level enhancement where among thousands of images of child pornography, three files portrayed violent images). Accordingly, the district court did not err in enhancing Duane's offense level pursuant to U.S.S.G. § 2G2.2(b)(4).

## IV.

Finally Duane contends that his sentence is unreasonable. Following *Booker v. United States*, we review sentences for reasonableness. 543 U.S. 220, 260-262 (2005). This review has both procedural and substantive components. *See Gall v. United States* 128 S.Ct. 586, 597 (2007). First, we must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the 18 U.S.C. § 3553(a) factors,[3] selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *Id.* at 597. Second, we consider the substantive reasonableness of the sentence under the abuse of discretion standard, which applies regardless of whether a sentence is inside or outside the Guidelines range. *Id.* Duane challenges his sentence on both procedural and substantive grounds.

## A.

First, Duane argues that his sentence is procedurally unreasonable because the district court's explanation did not demonstrate that it adequately considered the § 3553(a) factors or his arguments for a lesser sentence.

## 1.

Because Duane did not seek further explanation for the sentence imposed when given an opportunity to do so, we review this claim for plain error. In *United States v. Bostic*, this court explained that:

> after pronouncing the defendant's sentence but before adjourning the sentencing hearing, [the district court must] ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised. . . . If a party

---

[3]Title 18 U.S.C. § 3553(a) provides:

The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

> (2) the need for the sentence imposed –

>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

>> (B) to afford adequate deterrence to criminal conduct;

>> (C) to protect the public from further crimes of the defendant; and

>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

does not clearly articulate any objection . . . then that party will . . . face plain error review on appeal.

371 F.3d 865, 872-73 (6th Cir. 2004). "A district court can satisfy the requirements of the *Bostic* rule only by clearly asking for objections to the sentence that have not been previously raised." *United States v. Clark*, 469 F.3d 568, 570 (6th Cir. 2006).

In this case, by asking if there were "any objections that I haven't heard to this sentence," the district court was clearly eliciting objections not previously raised. Because Duane did not object to the district court's explanation, we review this explanation for plain error. To establish plain error, Duane must show "(1) error, (2) that was obvious or clear, (3) that affected [his] substantial rights, and (4) that affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (*en banc*) (internal quotations and citation omitted). "Only in exceptional circumstances . . . where the error is so plain that the trial judge was . . . derelict in countenancing it[,]" will we find such error." *Id.* (internal citation, quotation marks, and brackets omitted).

**2.**

In *United States v. Rita*, 127 S.Ct. 2456 (2007), the Supreme Court recently addressed what constitutes a sentencing court's sufficient explanation, pursuant to 18 U.S.C. § 3553(c), for a given sentence. Overall, a sentencing court should "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Id.* at 2468. But the Court emphasized that "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances. Sometimes a judicial opinion responds to every argument; sometimes it does not . . . . The law leaves much, in this respect, to the judge's own professional judgment." *Id*.

A lengthy explanation may be particularly unnecessary where a defendant's arguments are "straightforward [and] conceptually simple" and where a sentencing court imposes a within-Guidelines sentence. *Id*. at 2469; *accord Vonner*, 516 F.3d at 387; *compare* 18 U.S.C. § 3553(c)(2) (requiring sentencing court to give "the specific reason" for imposing an outside-Guidelines sentence). For example, in *Rita*, where the district court imposed a within-Guidelines sentence and the arguments were straightforward, the district court's explanation was sufficient where "[t]he record ma[de] clear that the sentencing judge listened to each argument," "considered the supporting evidence," was "fully aware" of the defendant's circumstances, and "imposed a sentence that [took] them into account." 127 S.Ct. at 2469; *accord Vonner*, 516 F.3d at 387.

To be sure, ideally a district court *will* address a defendant's nonfrivolous arguments for a lesser sentence. *See Vonner*, 516 F.3d at 386 ("[A] court is more likely to advance the goals of sentencing if it clearly explains to the defendant why the court denied his request for leniency."); *United States v. Liou*, 491 F.3d 334, 340 (6th Cir. 2007) ("[T]he better practice, post- *Rita,* is for a sentencing judge to 'go further and explain why he has rejected [each of the defendant's nonfrivolous] arguments' for imposing a sentence lower than the Guidelines range.") (quoting *Rita*, 127 S. Ct. at 2468.) But ultimately, a sentencing court has great discretion in terms of whether to respond to a given argument. *Rita*, 127 S. Ct. at 2468.

In addition, the district court is not required to explicitly consider each of the § 3553(a) factors or to engage in a "ritualistic incantation." *United States v. Trejo-Martinez*, 481 F.3d 409, 413 (6th Cir. 2007). Instead, the record must "demonstrate[] that the sentencing court addressed the relevant factors in reaching its conclusion." *Id*.

In this case, the district court's explanation explicitly addressed the relevant § 3553(a) factors and most of the defendant's arguments for a lesser sentence. We conclude that this explanation did not constitute error.

First, the record demonstrates that the sentencing court addressed the § 3553(a) factors that it found most relevant. In addition to the Guidelines range, the court focused on the seriousness of the offense. This was a proper consideration under § 3553(a)(2)(A) and a response to Duane's argument that his offense was victimless. In addition, observing that Mr. Duane is "not the only one" who has purchased child pornography, the district court noted that "[d]eterrence should be a part of the sentencing factor here." This was an appropriate consideration pursuant to § 3553(a)(2)(B). Finally, the district court referenced Duane's need for treatment, a proper consideration under § 3553(a)(2)(D).

The district court also addressed four out of five of Duane's arguments for a lesser sentence. Again, Duane's arguments were that: (1) he had zero criminal history points; (2) the majority of the images on his computer consisted of child erotica, not actual child pornography; (3) despite being 57 years old he had no history of sexual misconduct; (4) his conduct did not include touching children and he does not present a risk of such behavior; and (5) he would be amenable to treatment. The district court responded in some form to Duane's second, third, fourth, and fifth arguments. As to Duane's second argument, the district court noted that the images ranged from "masochistic portrayals of deviancy" to "so-called erotica, but even [the latter] is a terrible victimization . . . ." In response to Duane's third argument, the court explained that its sentence was "sufficient given Mr. Duane's age to make certain that he is not further involved in this disgusting business." Regarding Duane's fourth argument, the district court emphasized that this crime was serious "not because the defendant . . . has tried to contact or molest a child," but because "offenders like Duane help drive this market." Finally, in response to Duane's fifth argument, the court recognized that "there's no doubt that Mr. Duane needs treatment . . . so that he does not re-offend, and I believe that will be provided for him."

To be sure, the district court did not respond to Duane's first argument—that he deserved a more lenient sentence because he had zero criminal history points.[4] This was not a particularly strong argument given that Duane's criminal history category was taken into account in determining his Guidelines range. But the argument was not completely frivolous. Because Duane had zero points at age 57, he might plausibly argue that even category I—which applies when a defendant has zero or one criminal history point(s)—overstated his criminal history to some degree. Although the district court would have ideally addressed this argument, we can hardly say that this failure alone constituted error in this case. Given that the district court imposed a within-Guidelines sentence, addressed the factors it found relevant, and addressed the majority of Duane's arguments, we conclude that the district court did not err.

**B.**

Duane also argues that the length, or substance, of his sentence was unreasonable. "[A] sentence may [be] substantively unreasonable where the district court [1] select[s] the sentence arbitrarily, [2] bas[es] the sentence on impermissible factors, [3] fail[s] to consider pertinent § 3553(a) factors or [4] giv[es] an unreasonable amount of weight to any pertinent factor." *United States v. Jones,* 489 F.3d 243, 252 (6th Cir. 2007) (citation and quotation marks omitted). Duane

---

[4]The district court also did not explicitly address Duane's second argument with respect to the proportion of erotic verses pornographic images. But this argument seems particularly unpersuasive. Duane's offense level was determined in part by his possession of over 600 *pornographic* images. That he also possessed an *additional 3,728 erotic child images* hardly seems to weigh in his favor.

argues that the district court failed to consider pertinent § 3553(a) factors and gave too much weigh to the Guidelines calculation.

Because Duane was sentenced within the Guidelines range, a rebuttable presumption of reasonableness attaches to his sentence. *See United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006); *see also Rita,* 127 S.Ct. at 2467 (approving of this presumption). Duane does little to rebut this presumption. Again, the district court clearly considered the § 3553(a) factors that it found most pertinent—namely the seriousness of the crime, the need for deterrence, and the Guidelines range. Neither the district court's correct observation that it was "obliged to consider" the recommended Guidelines range nor the fact that it actually sentenced Duane within this range alone suggest that it gave this factor disproportionate weight. Duane's sentence was substantively reasonable.

## V.

For the foregoing reasons, we affirm Duane's sentence.