NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0210n.06

No. 12-3622

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Feb 28, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| STEPHEN S. HOLMAN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: COOK, WHITE, and DONALD, Circuit Judges.

COOK, Circuit Judge. Defendant-Appellant Stephen Holman, who pled guilty to money laundering and conspiring to commit mail fraud, appeals the procedural and substantive reasonableness of his 41-month, within-Guidelines sentence. He further challenges the district court's loss-amount calculation. We AFFIRM.

I.

From March 2004 until June 2006, Holman conspired with seventeen others to defraud various lenders in a multi-million dollar mortgage-fraud scheme. While working as a loan officer for Buckeye Lending, Inc. ("Buckeye"), he prepared and submitted fake applications to various

lenders requesting mortgage loans for straw buyers.[1] To qualify for these home loans, Holman and the straw buyer would misrepresent the buyer's financial status or work experience, conceal the true owner's identity, and overstate the value of the property.

In addition to recruiting several straw buyers, Holman also employed title agents to doctor real estate closing documents. This collaboration resulted in bogus settlement statements assigning excess loan proceeds to Holman, his company, or other co-defendants' companies. In truth, Holman did nothing to justify these payments. He managed this fraud scheme for 28 properties throughout the Cleveland, Ohio area, two of which earned him a 12-year state sentence. The remaining 26 properties formed the basis for this federal conviction. In all, Holman's scams cost the lenders over $3 million.

In late October 2011, Holman entered a plea agreement, pleading guilty to mail fraud and money laundering. In exchange, the government agreed not to oppose Holman's efforts to persuade the court to allow his sentence to run concurrently with his state sentence. The agreement acknowledged, however, the district court's discretion to impose a concurrent, partially concurrent, or consecutive sentence, under U.S.S.G. § 5G1.3(c). With his plea, Holman also agreed to waive his right to appeal a within-Guidelines sentence.

---

[1]The term "straw buyers" here refers to individuals who signed mortgage loan documents, usually for compensation, in order to conceal the identity of the actual owner of the property from the lending institution.

During the May 2012 sentencing hearing, defense counsel urged the court to consider Holman's twelve-year state sentence and impose a concurrent, low-end Guidelines term. As for loss amount, neither party objected to the $3 million figure.

The court then computed Holman's Guidelines range using an offense level of 20 and a criminal history category of I to reach a range of 33 to 41 months. Acknowledging its discretion to impose either a concurrent, partially concurrent, or consecutive sentence, the court asked if the parties objected to the previously stated calculations. Neither side objected. Then recounting Holman's conduct, his criminal record, and the impact of his crimes on society as a whole, the court delivered its sentence: 41 months for the federal counts, running concurrent to each other but consecutive to the undischarged state sentence. When asked for objections, defense counsel replied, "[N]one other than [what] we've already discussed before here." Holman timely appeals.

II.

A.  Appellate Waiver in Plea Agreement

As an initial matter, we consider the government's stance that Holman's written plea agreement precludes this appeal. Although we will not review sentences where a valid waiver controls, we construe unclear or ambiguous provisions against the government. *United States v. Fitch*, 282 F.3d 364, 367-68 (6th Cir. 2002). To that end, where the waiver provision expressly bars appealing a within-Guidelines sentence, but makes no reference to the district court's imposition of

a consecutive sentence, a defendant's challenge moves forward. *United States v. Bowman*, 634 F.3d 357, 360-361 (6th Cir. 2011). And the fact that Holman's combined federal and state sentences exceed the Guidelines range also supports our decision to entertain his appeal of the consecutive aspect of his sentence. *See United States v. McCree*, 299 F. App'x 481, 482 (6th Cir. 2008) (considering undischarged state sentence for purposes of determining whether the sentence "exceed[ed] the maximum sentencing range determined under the advisory sentencing guidelines").

The government argues that even if not foreclosed by waiver in the plea agreement, Holman forfeited review of the court's consecutive-sentence decision, given that when asked the *Bostic* question, he answered "none other than [what] we've already discussed before here." We find that counsel's reference to the argument pressed just prior to the posing of the *Bostic* question adequately preserved the claimed error for our review. *See United States v. Herrera-Zuniga,* 571 F.3d 568 (6th Cir. 2009) (citing *United States v. Vonner*, 516 F.3d 382, 391 (6th Cir. 2008) (en banc)) (instructing courts to "apply the [waiver] rule 'with an eye to the realities of the facts and circumstances of each sentencing proceeding'"). Thus we will review Holman's challenge to the court's imposition of consecutive sentences as neither foreclosed by his appeal waiver nor forfeited by counsel's response to the *Bostic* question.

Holman's loss-calculation challenge, however, unlike the consecutive-sentence appeal, fits squarely within his appellate waiver. The pertinent section in the agreement reads:

> **Waiver of Appellate Rights.** . . . Defendant expressly and voluntarily waives those rights, except as specifically reserved below. Defendant reserves the right to appeal: (a) any punishment in excess of the statutory maximum; and, (b) any sentence to the extent it exceeds the maximum of the sentencing range determined under the advisory Sentencing Guidelines in accordance with the sentencing stipulations and computations in this agreement.

Nowhere does (a) or (b) reserve challenges to the loss amounts underlying the Guidelines calculation. We enforce the waiver and discard this issue.

B. Reasonableness of Consecutive Sentence

No abuse of discretion occurs when a court "makes generally clear the rationale under which it has imposed the consecutive sentence." *United States v. Owens*, 159 F.3d 221, 230 (6th Cir. 1998). The court need not disclose "specific reason[s] for a consecutive sentence," *United States v. Cochrane*, 702 F.3d 334, 346 (6th Cir. 2012) (quoting *United States v. Johnson*, 640 F.3d 195, 208-09 (6th Cir. 2011)), but may refer to relevant considerations in another document such as the Presentence Report. *Id.* (citing *United States v. Berry*, 565 F.3d 332, 342-43 (6th Cir. 2009)).

Contrary to Holman's assertion, the district court adequately discussed the relevant § 3553(a) factors here. It highlighted Holman's leadership role in the conspiracy—"It was his brainchild." The fact that Holman "used his relationship with others to involve them in the scheme, . . . people who were in a sense victims to their trust in Mr. Holman," also figured prominently in the court's decision. It observed how Holman's crimes had a "deleterious effect on the economy," made plain "with the collapse of subprime lending market schemes." This was a proper consideration under §

3553(a)(2)(A). *See United States v. Duane*, 533 F.3d 441, 452 (6th Cir. 2008) (rejecting procedural reasonableness challenge where district court properly considered most—but not all—of defendant's arguments for a lower sentence). The trial court went further, examining Holman's personal history, his state sentence, and his family's support. It also observed that the circumstances of the crime justified an upward variance. Yet the court opted for a Guidelines sentence that would run consecutive to Holman's undischarged state sentence. We discern no abuse of discretion from the district court's well-reasoned judgment nor the arguments Holman offers for a contrary reading.

C. Alleged Sentence Disparity

Holman also asserts that the court abused its discretion by imposing a sentence above the national (28.5 months) and local (23.1 months) averages for fraud. Aside from the obvious question about such statistics—what sorts of criminal schemes supported those averages—Holman's sentencing range, 33-41 months, which accounts for the scope of this mortgage fraud scheme, already exceeds the national average. *See United States v. Amawi*, 695 F.3d 457, 489 (6th Cir. 2012) (rejecting party's sentencing-disparity argument because the cited cases bore "significant factual dissimilarities that [did] not create any reversible tension" with the district court's sentence). And in any event, the district court's discussion of the relevant § 3553(a) factors obviated the need for it to "explicitly address . . . possible sentencing disparities." *See United States v. De Santiago*, 487 F. App'x 278, 279 (6th Cir. 2012) (citations omitted).

III.

We AFFIRM the district court's judgment.