NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0466n.06

Case No. 23-5236

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="2"></td></tr>
<tr><td></td><td>)</td></tr>
</table>

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| PATRICK WATKINS, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | OPINION |

> **FILED**
> Nov 08, 2023
> KELLY L. STEPHENS, Clerk

Before:  SUTTON, Chief Judge; CLAY and LARSEN, Circuit Judges.

SUTTON, C.J., delivered the opinion of the court in which LARSEN, J., joined.  CLAY, J. (pp. 7–13), delivered a separate dissenting opinion.

SUTTON, Chief Judge.  Patrick Watkins violated his supervised release conditions by stealing catalytic converters and possessing fentanyl and methamphetamine.  The Sentencing Guidelines recommended a prison term between 21 and 27 months.  The district court sentenced him to 21 months.  Watkins challenges the sentence as procedurally and substantively unreasonable.  We affirm.

I.

Watkins pleaded guilty to being a felon in possession of a firearm.  *See* 18 U.S.C. § 922(g)(1).  District Judge Sheryl Lipman sentenced him to 60 months followed by three years of supervised release.  About a year into his supervised release, Watkins and his girlfriend overdosed on drugs and drove to a doctor's office for treatment.  Watkins entered the office while his

girlfriend stayed in the car. The doctor's office called police officers, who brought overdose medication that the doctor did not have. Upon arrival, the officers first noticed the girlfriend, who was "going in and out of consciousness," in the passenger seat of the car. R.106 at 11. She told the officers that Watkins had methamphetamine and fentanyl on his person. In the car, they also saw drug paraphernalia, counterfeit money, and catalytic converters. When the officers entered the office, they confirmed that Watkins was carrying methamphetamine and fentanyl. Watkins' probation officer told the court about these supervised-release violations. Rather than impose a sentence for the violations, a magistrate judge allowed Watkins to enter a drug rehabilitation program.

Completing a program proved challenging for Watkins. He tried to enter a program at the Salvation Army, but they turned him away because he had Suboxone in his system. Once clean, he entered a six-month program at the Salvation Army, but they asked him to exit the program after 20 days because he left the facility without permission. After learning of these problems, the district court gave him another chance, allowing him to return to the Salvation Army for treatment. The court planned to hold a status conference two months later to check on Watkins' progress. The day before that conference, Watkins told the court that he had not reentered the program because he had been detained by state officials in the Fayette County jail. The district court again allowed Watkins to receive treatment rather than proceed to sentencing. Watkins entered an outpatient program. While he made some progress there, his attendance was inconsistent, and he ultimately failed a number of drug tests.

Watkins' probation officer informed the government of Watkins' failed drug tests and inconsistent attendance, and the government in turn requested that the court impose a custodial sentence for violating his supervised release conditions. In response, the district court held a pair

of sentencing hearings. The court confirmed that Watkins had violated his terms of supervised release by possessing narcotics and stealing catalytic converters. Given Watkins' criminal history, the Sentencing Guidelines recommended 21 to 27 months in prison. The government requested a 21-month sentence. Watkins asked for a non-custodial sentence, in other words, simply more supervised release.

During the hearings, the court discussed Watkins' "[m]any failures" with non-custodial rehabilitation and expressed concern that Watkins would "kill [himself] with drugs" unless he went to jail. R.107 at 8, 20. The court also expressed frustration that Watkins had misled the court. He had said he was living in a halfway house when he was not. And he claimed that one of his positive drug tests was inaccurate when in fact he had relapsed. The district court sentenced Watkins to 21 months in prison.

II.

*Procedural reasonableness.* A sentence is procedurally unreasonable when the district court fails to consider the relevant § 3553(a) factors and other non-frivolous sentencing arguments. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). We do not require district courts to "explicitly reference" the § 3553(a) factors, only that the record contain evidence that the "court gave each of them consideration." *United States v. Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010). What matters most in making that assessment is "what the [record] reveals that the court did," not necessarily "what the [record] reveals that the court said." *United States v. Gunter*, 620 F.3d 642, 646 (6th Cir. 2010).

The district court did not commit any reversible errors. The relevant statute requires courts to consider seven factors "in determining the particular sentence to be imposed." 18 U.S.C. § 3553(a). Four of the factors have no application here. Watkins did not present a "pertinent

policy statement" for the court to consider. *Id.* § 3553(a)(5). There is no "need to provide restitution to any victims" of Watkins' "offense." *Id.* § 3553(a)(7). Because Watkins' sentence falls within the Guidelines range, there is no risk that his sentence will cause "unwarranted sentence disparities among" similarly situated defendants, *id.* § 3553(a)(6), or any risk that the district court failed to consider "the sentencing range established for" his crime and history, *id.* § 3553(a)(4). *See United States v. Simmons*, 501 F.3d 620, 626 (6th Cir. 2007).

That leaves three factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); (2) "the need for the sentence imposed" to reflect the goals of criminal law, *id.* § 3553(a)(2); and (3) "the kinds of sentences available," *id.* § 3553(a)(3).

The district court adequately considered each of these factors. The district court, to begin, considered Watkins' offense and history. For a supervised release revocation, the "offense" in question is the underlying conviction, not the conduct that violated the supervised release conditions. *United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011). To analyze this factor, we consider the "record as a whole," not just the sentence modification hearing. *Chavez-Mesa v. United States*, 138 S. Ct. 1959, 1967 (2018). Judge Lipman has been involved in this case from the beginning. She accepted Watkins' plea, held a hearing, and imposed the original sentence, demonstrating that she clearly "considered the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). From the original sentencing hearing to the most recent revocation hearings, she showed considerable understanding of his addiction-riddled criminal history, offering Watkins "all these chances to do whatever [he] need[ed] to do to stay out" of prison and "get better," before finally imposing a prison sentence when those other paths had failed multiple times. R.106 at 58.

4

The court also considered the final two factors: "the need for the sentence imposed" to reflect the goals of criminal law and "the kinds of sentences available." 18 U.S.C. § 3553(a). Three statements from the sentencing hearings check these two boxes. The court noted that Watkins had continued to commit crimes, and Watkins attributed those crimes to his drug use. The court worried that, without imprisonment, Watkins was likely to "kill [himself] with drugs." R.107 at 20. Then the court spoke directly to Watkins: "We've given you all these chances to do whatever you need to do to stay out [of prison], and you haven't done it." R.106 at 58. Then the court explained to him: "There has to be some change in order to get you off this path. . . . And for that there needs to be incarceration." R.107 at 20–21. These statements reflect the court's view that a within-Guidelines prison sentence was necessary to rehabilitate Watkins, deter future crimes, and save Watkins from himself. They also show that the court considered other, non-custodial sentences, and rejected them when it told Watkins the only way "to get you off this path" is "incarceration." *Id.*

Watkins counters that "the only relevant sentencing factor the court did consider was the need to provide the defendant appropriate treatment." Appellant's Br. 24. But that unfairly characterizes what the judge said, as just shown.

Watkins adds that the court failed to address his arguments for a noncustodial sentence. But the court did consider a non-custodial sentence when it said Watkins had to get "off this path." R.107 at 20. It concluded that a prison sentence was not only the best option but also an indispensable option to keep him alive. The district court at any rate need not "expressly address" every sentencing argument as long as the record is "logically responsive" to non-frivolous arguments. *United States v. Chiolo*, 643 F.3d 177, 182 (6th Cir. 2011). The court's statements met this modest standard.

*Substantive reasonableness.* A sentence must be "sufficient, but not greater than necessary," to accomplish the goals of proportional punishment, deterrence, public safety, and rehabilitation. 18 U.S.C. § 3553(a). We review a sentence's length for abuse of discretion. *Rayyan*, 885 F.3d at 442. Within-Guidelines sentences, like this one, are presumed to be substantively reasonable. *United States v. Vonner*, 516 F.3d 382, 389–90 (6th Cir. 2008) (en banc).

Watkins briefly argues that the district court's 21-month sentence was "too long." *Rayyan*, 885 F.3d at 442. But in doing so, he does not remotely rebut the presumption that his within-Guidelines sentence was substantively reasonable. His serial failures in continuing with treatment and his serial violations of the law made this less-than-two-year sentence eminently reasonable.

We affirm.

**CLAY, Circuit Judge, dissenting.** The district court in this case failed to comply with federal law by neglecting to properly explain Watkins' sentence, consider the relevant 18 U.S.C. § 3553 factors, and address Watkins' counterarguments. In affirming the sentence, the majority casts aside the demands of the statute and Supreme Court precedent—not to mention the important policy goals the procedural reasonableness requirement is intended to achieve. The majority adopts a strained construction of the transcript neither required by our Court or Supreme Court precedent in order to excuse the district court's abuse of discretion. Watkins will spend more than 600 days in federal prison. He at least deserves a reasoned explanation as to why. I therefore respectfully dissent.

Appellate review of a sentence imposed by the district court should not require us to pore over the sentencing transcript to discern the district court's consideration of the required factors and counterarguments. As we have previously held, "[i]f this court is left to divine or extrapolate the district court's reasoning after the fact, the district court has not done its job of imposing a procedurally reasonable sentence." *United States v. Byrd*, 843 F. App'x 751, 756 (6th Cir. 2021). And if the district court "hides its reasoning or requires us to ponder and speculate" then it is more likely that the sentence is procedurally unreasonable. *United States v. McBride*, 434 F.3d 470, 476 n.3 (6th Cir. 2006). Similarly, "whenever a district court requires us to infer its bases for rejecting arguments, the district court greatly increases the risk of a remand." *United States v. Chiolo*, 643 F.3d 177, 185 (6th Cir. 2011). The record here does require us to infer the district court's hidden reasoning; rather than see that as indicative an inadequate sentencing, the majority stretches the plain meaning of the district court's statements to manifest compliance with § 3553 and Supreme Court precedent.

A sentence is procedurally unreasonable if the district court fails to consider the § 3553(a) factors or fails to adequately explain the chosen sentence and, instead, simply selects what the judge deems appropriate without the required consideration. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). The relevant § 3553(a) factors specified by the supervised release statute are: "the nature and circumstances of the offense and the history and characteristics of the defendant; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant appropriate treatment; the pertinent Guidelines or policy statements; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to victims." *United States v. Johnson*, 640 F.3d 195, 203 n.1 (6th Cir. 2011) (citing 18 U.S.C. §§ 3553(a), 3583(e)). In Watkins' case, only the first four factors are applicable. And the record does not reflect that the district court adequately considered any of them in connection with Watkins' sentencing.

At the supervised release revocation hearing, the district court found by a preponderance of the evidence that Watkins had violated the terms of his supervised release. The district court, noting there was "proof of two lies" from Watkins, sentenced him to 21 months in prison. Sentencing Hr'g Tr., R. 107, Page ID #309. Although the supervised release revocation was appropriate, the district judge utterly failed to provide an adequate explanation for the sentence that was imposed. In sentencing Watkins, the district court's explanation was limited to the following:

> Look. I'm done. I'm done. I've got proof of two lies from Mr. Watkins. We talked about the first lie last time, when he was here on January 19th of this year, said that he was still living at Vertava. And we found out in—at the last hearing or leading up to the last hearing that that was a lie. That he had been kicked out of the facility in December.
>
> Now we've got proof of a second lie. He told me at the last hearing on March 3rd that the January 25th and February 16 reports of positive tests were not him, were not accurate.

8

> There is proof now that the January 25th test from 2023 was him, and it is positive for the substances that were indicated.
>
> …
>
> Look, sir, I think you're lying to yourself more than you're lying to me. You're lying to yourself about whether you're ready to make the changes you need to make in your life to get better. You're going to kill yourself with drugs if you continue on this path. There has to be some change in order to get you off this path.
>
> From my time on the bench, I think these are the situations that are some of the most difficult, where I understand you have a real disease. But you have got to be the one that's committed to working on your disease, and you're just not showing it.
>
> I get that there are hiccups along the way. I understand that. This is way beyond hiccups. This is you not committed to doing what you need to do to get better. And for that there needs to be incarceration.
>
> I'm going to sentence you to the 21 months['] incarceration with no supervised release to follow. My hope for you, sir, is that you use these 21 months to work on yourself to get better. And that when you come out, you are truly committed to continuing that progress. You're going to be on your own. We can't spend all these resources on someone who's not willing to help themselves, but my hope is that you are willing to help yourself when you come out.

*Id.* at 309–311.

The majority sees no problem with the district court's explanation. As to the first factor, the majority finds it sufficient that the district court had sentenced Watkins for his underlying conviction offense and thus must necessarily have "considered the nature and circumstances of the offense." Maj. Op. at 4. However, the majority's analysis ignores the other half of that factor, which also requires the district court to consider "the history and characteristics of the defendant." 18 U.S.C. § 3553(a). The district court focused *only* on Watkins' lack of commitment to getting treatment, without acknowledging his other history and characteristics, such as his family life, remorse, and more recent negative drug screens. And a partial consideration of one factor is not enough. *See United States v. Thomas-Matthews*, No. 21-1824 at 21 (6th Cir. 2023) (vacating a sentence under plain error review where "the only history that the district court discussed . . . is [the defendant's] criminal history.").

9

The majority next reads into the transcript a consideration of the other factors where none exists. The district court noted that Watkins was likely to "kill [himself] with drugs," that "[w]e've been giving you all these chances to do whatever you need to do to stay out [of prison], and you haven't done it," and that "[t]here has to be some change in order to get you off this path. . . . And for that there needs to be incarceration." Sentencing Hr'g Tr., R. 106, Page ID #284; Sentencing Hr'g Tr., R. 107, Page ID #310–11. The majority holds that these statements show a consideration of the "goals of criminal law," Maj. Op. at 5, which the majority uses as a catchall term for the individual factors of § 3553(a)(2), perhaps to distract from the fact that, of those factors, the district court considers only the need to provide treatment for the defendant. But § 3553(a)(2) also includes the need to deter and the need to protect public safety, neither of which were addressed by the district court, and certainly not in the statements the majority cites.

The district court also did not sufficiently consider Watkins' non-frivolous arguments in favor of a non-custodial sentence, and the majority overreads the transcript to hold to the contrary. The district court must "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). Here, defense counsel advocated for a non-custodial sentence based, in part, on arguments pertaining to the potential for relapse in people struggling with addiction, Watkins' overall progress with treatment, his custody of his son, and his assumption of responsibility for misleading the court. And Watkins himself informed the district court about his caregiving for his grandmother. The district court discussed Watkins' need to get help, thus addressing one of the defense's arguments, but it made no mention of his son, his grandmother, his attempts to accept responsibility, or his recent negative tests and progress with treatment.

10

The majority fails to successfully cast the district court's sentence in a better light. In the majority's eyes, "the court did consider a non-custodial sentence when it said Watkins had to get 'off this path.' . . . . It concluded that a prison sentence was not only the best option but also an indispensable option to keep him alive." Maj. Op. at 5. However, reading the plain language of the district court's statement, the district court only addressed Watkins' argument that he still needed substance abuse treatment. The fact that the district court addressed one of Watkins' arguments against a custodial sentence did not absolve it of the requirement to address his other non-frivolous arguments, such as his remorse, his dependent family members, and his recent success in treatment. The district court's words cannot and should not be so broadly construed as to suggest that it considered what is clearly not indicated.

Aside from the majority's strained construction, the majority fails to identify the standard of review under which it has affirmed Watkins' sentence. We must review Watkins' sentence for an abuse of discretion, but the majority's review is so deferential that it resembles plain error.[1] The distinction matters. Plain error is deferential review and requires the defendant to show that the error affected his substantial rights and the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Duane*, 533 F.3d 441, 451 (6th Cir. 2008). And under plain error, "sentences are reversed only in exceptional circumstances where the error is so plain that

---

[1] District courts must ask the parties whether they have any objections to the sentence before the close of the sentencing hearing. *United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004). If the district court fails to do so, parties "will not have forfeited their objections and thus will not be required to demonstrate plain error on appeal." *Id.* In this case, the district court, after pronouncing Watkins' sentence, asked "[d]oes the government have anything else?" and asked defense counsel "anything else?" Sentencing Hr'g Tr., R. 107, Page ID #311. This is insufficient to satisfy the *Bostic* requirement. *See United States v. Clark*, 469 F.3d 568 (6th Cir. 2006); *United States v. Thomas*, 498 F.3d 336 (6th Cir. 2007). Therefore, Watkins did not forfeit his objection; abuse of discretion, rather than plain error, is the proper standard of review.

the trial judge was derelict in countenancing it." *United States v. Simmons*, 587 F.3d 348, 365 (6th Cir. 2009) (cleaned up). Watkins need not clear such a high hurdle. He need only show that the district court failed to consider the § 3553(a) factors or failed to adequately explain the chosen sentence. *Gall*, 552 U.S. at 51. Watkins met that burden in this case, where the record contains no evidence that the district court considered all of the required § 3553(a) factors, or any but one of Watkins' counterarguments.

The majority, in affirming this sentence, ignores our precedent, which has rightfully vacated and remanded sentences when district courts have failed to consider the required statutory factors and defendant counterarguments. *See, e.g.*, *United States v. Penson*, 526 F.3d 331, 338 (6th Cir. 2008) (vacating a sentence where, after mentioning the factors, "the district court never verbalized which of these factors were particularly important to the circumstances of this case or how it selected the sentence in light of these factors"). We do so rather than engage in the very "divining," "extrapolating," "pondering," and "speculating" with respect to the district court's reasoning that we have previously frowned upon and found "greatly increases the risk of a remand." *Byrd*, 843 F. App'x at 756; *McBride*, 434 F.3d at n.3; *Chiolo*, 643 F.3d at 185. The majority's efforts to mine the transcript for the required considerations underscore the failure of the district court to explain itself as statutorily required.

Failing to properly explain a federal sentence is not merely a matter of improper procedure. As both this Court and the Supreme Court have acknowledged, these procedural requirements serve important policy goals. "[A] court is more likely to advance the goals of sentencing if it clearly explains to the defendant why the court denied his request for leniency." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc). A well-explained sentence "provides the defendant with a clear understanding of the basis for his or her sentence," *United States v. Petrus*,

588 F.3d 347, 353 (6th Cir. 2009) (quoting *United States v. Herrod*, 342 F. App'x 180, 186 (6th Cir. 2009)); "allow[s] for meaningful appellate review," *Gall*, 552 U.S. at 50; and "promote[s] the perception of fair sentencing." *Id*. The Supreme Court has acknowledged that "[b]y articulating reasons, even if brief, the sentencing judge not only assures reviewing courts (and the public) that the sentencing process is a reasoned process but also helps that process evolve" as information flows from the courts to the Sentencing Commission and Congress over time. *Rita*, 551 U.S. at 357–58. Moreover, the clear articulation of sentencing factors benefits this Court's docket and those of the district courts: "if district courts fully complied with [the] obligation" to articulate the grounds for rejecting the claims raised by a defendant, "many frivolous appeals and clarification remands could be avoided." *Petrus*, 588 F.3d at 353 (quoting *Herrod*, 342 F. App'x at 186).

In affirming this sentence, the majority deems unimportant and undermines such significant policy goals. And that the majority must engage in a Rorschach-like exercise to read considerations of the required factors and arguments, where none are indicated, in order to excuse a deficient explanation emphasizes that the district court abused its discretion. I therefore respectfully dissent.