*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 11a0172p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,

      *Plaintiff-Appellee,*

    *v.*

MICHAEL V. CHIOLO,

      *Defendant-Appellant.*

No. 09-3918

———————————

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 05-00395-001—John R. Adams, District Judge.

Decided and Filed: June 30, 2011

Before: MARTIN, SILER, and ROGERS, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** Spiros P. Cocoves, Toledo, Ohio, for Appellant. Robert E. Bulford, ASSISTANT UNITED STATES ATTORNEY, Akron, Ohio, for Appellee.

———————————

**OPINION**

———————————

ROGERS, Circuit Judge. Defendant Michael V. Chiolo admitted violating the terms of his supervised release by engaging in acts of domestic violence. The district court sentenced Chiolo to thirty-seven months' imprisonment for this violation, a term above the federal sentencing guidelines range of five to eleven months. The district court sufficiently explained the rationale behind its sentencing decision. Also, while the court did not expressly address some of Chiolo's non-frivolous arguments, its sentencing rationale was logically responsive to those conceptually simple arguments. For these reasons, the district court's sentence was procedurally reasonable.

On August 17, 2005, Michael Chiolo was indicted on the charge of conspiracy to distribute marijuana, in violation of 21 U.S.C. § 846. Chiolo pled guilty and the court sentenced him to seventy-eight months' incarceration, reduced from a mandatory minimum sentence of 120 months because of substantial assistance, to be followed by five years of supervised release. The Government later moved for a further reduction in Chiolo's sentence due to his substantial assistance, which the district court granted. The district court accordingly reduced Chiolo's sentence to forty-one months of incarceration, a thirty-seven-month reduction, with the original five years of supervised release to follow. Chiolo completed this forty-one-month prison term and commenced his supervised release on October 7, 2008.

On June 11, 2009, Chiolo was arrested on the charges of felonious assault and domestic violence against his girlfriend and/or fiancée, Melissa Gregory. The next day, Chiolo submitted a urine sample for a drug screen. Although Chiolo denied submitting substituted urine, the test results stated that Chiolo's sample was "not consistent with normal human urine, urine substituted." The district court issued an arrest warrant for Chiolo because his felonious assault and domestic violence acts constituted grade C supervised release violations. Chiolo was found guilty of the domestic violence charge, and the felonious assault charge was dismissed upon motion of the prosecutor.

The sentencing hearing for Chiolo's supervised release violation was held on July 16, 2009. During this hearing, Officers Jerrod Blanc and Donald Miller testified that Gregory had described the domestic violence incident to them. Gregory told them that she had discovered a female neighbor performing oral sex on Chiolo in his garage, that Gregory got into a physical altercation with the neighbor, and that Chiolo then attacked Gregory, leading to Gregory's hospitalization. Blanc and Miller testified that Gregory had bruises on her face, mouth, arms, hands, and legs. Miller testified that Gregory believed Chiolo was using heroin and that she knew where Chiolo was getting his heroin from. Miller also testified that during an earlier raid on Chiolo's house, marijuana paraphernalia and approximately $83,000 cash were recovered. Miller believed that the cash was from prior drug proceeds.

Gregory then testified that she and Chiolo lived together at Chiolo's house, along with Chiolo's dementia-stricken mother. Describing the domestic violence incident, Gregory said that she saw Chiolo with the neighbor, that Gregory attacked the neighbor, and that Chiolo tried to stop Gregory. Gregory then punched Chiolo, knocking out two of his teeth and injuring her right hand. Gregory testified that she and Chiolo had altercations throughout the day, but that events after the garage fight were "very blurry." Gregory said that Chiolo struck her that day, and that she was later taken to the hospital after being arrested for driving her car into a fence. Gregory said she could not remember what she told the police about the incident. She testified that she had no follow-up medical treatment and that she was no longer injured. Gregory said that the entire incident was "just an accident . . . that went out of proportion," that none of it would have happened if she had not punched Chiolo, and that Chiolo had never previously been violent with her.

Chiolo's counsel stated that while Chiolo had no explanation for his failed drug test, all of his other drug tests during the preceding nine months of supervised release had been clean. Counsel claimed that Chiolo did not have a history of violence toward people and that the domestic violence incident was thus an "aberrational event." Counsel argued that the domestic violence incident was the result of too many stressors in Chiolo's life, including his mother's infirm condition, his father's suicide, and a lack of psychological counseling. Counsel asked the district court to sentence Chiolo within the guidelines range of five to eleven months and to consider electronically monitored house arrest as an option. Counsel also noted that the state court had required Chiolo to complete a twenty-six-week counseling and anger-management program, and opined that Chiolo needed this treatment.

Chiolo then addressed the court. Chiolo claimed that he had quit drugs and that he therefore could not explain the failed drug test. Describing the domestic violence incident, Chiolo explained that he lost his temper, blacked out, and could not remember what happened afterwards. Chiolo mentioned that he had undergone drug counseling

but not anger management, and said that he wanted psychological help. Chiolo also indicated that he wanted to be able to provide care to his ailing mother.

The court sentenced Chiolo to thirty-seven months' imprisonment. The court found that Chiolo had attempted to defeat, or failed, the June 12 drug screen since there was "no credible evidence to support the fact that anything other than that has occurred in this particular case." Next, the court said that it had listened to a statement about the domestic violence incident that Gregory had given the police, and found that Gregory's hearing testimony was not credible compared to that previous statement. The court said that the version of events described in Gregory's police statement and in a statement from Gregory's mother "is far more important and relevant in the Court's consideration of the nature and extent of [Chiolo's] wrongful conduct." According to these statements, Chiolo attacked Gregory at their residence, followed her to her mother's home after Gregory retreated there, and then continued to beat her. Chiolo then threatened to harm and/or kill Gregory's mother when the latter tried to intervene. As the court saw the altercation, "[t]his was not an isolated incident" and "was not, as described, some generic domestic violence." Rather, the court considered it a serious, violent crime that was only classified a misdemeanor because Gregory was afraid to testify against Chiolo. The seriousness of the crime, reasoned the court, was reinforced by photos of Gregory's wounds. The court explained that, while it must consider the guidelines' policy statements, it was not required to follow them.

In addition to considering the violent nature and circumstances of the domestic violence incident, which the court believed more serious than what a grade C violation would normally indicate, the court said that it also considered Chiolo's history and characteristics. The court pointed out that Chiolo had already been granted dramatic sentence reductions, first from a 120-month mandatory minimum sentence to seventy-eight months, and then from seventy-eight months to forty-one months. The court explained that Chiolo's violent behavior, coupled with his attempt to defeat the drug screen, indicated that Chiolo had in fact returned to drug abuse. The court also explained the need for Chiolo's sentence to protect the public, citing the $83,000 cash

discovered as evidence of Chiolo's extensive drug trafficking, and the need for the sentence to protect Gregory, noting that she was attempting to flee Chiolo at the time of the attack. Concluding that Chiolo did not deserve a second chance at a sentence reduction, the court sentenced Chiolo to thirty-seven months, which brought Chiolo back to his former, already reduced, seventy-eight-month sentence, and stated that "I think I've adequately addressed all the reasons under 18:3553(a) why this sentence is necessary and why it clearly is called for."

Chiolo's sentence was procedurally reasonable because the district court articulated a reasoned basis for imposing an above-guidelines sentence.[1] After noting that the guidelines' policy statements suggested a sentencing range of five to eleven months, that the court should consider the guidelines' policy statements and the statutory factors listed in 18 U.S.C. § 3553(a), and that the court had consulted relevant case law guiding its decision (namely, *United States v. Bolds*, 511 F.3d 568 (6th Cir. 2007), and the authority cited therein), the court explained that it rested its sentencing decision on a number of considerations. These included: (1) the serious and violent nature of the circumstances surrounding Chiolo's supervised-release violation; (2) indications that Chiolo had returned to the lifestyle that brought him to court in the first instance; (3) the need to protect Gregory and the rest of the public from Chiolo; and (4) the fact that Chiolo had already received dramatic sentence reductions in the past.

First, the court considered the circumstances of the supervised-release violation to be much worse than would otherwise be indicated by the underlying domestic violence conviction. Rather than simply accept the incident's uninformative "grade C violation" label, the court reviewed statements about the incident that both Gregory and her mother gave the police. These statements revealed that Chiolo brutally beat Gregory at his house, followed her to her mother's house when she attempted to escape, continued beating her upon arriving at her mother's house, and even threatened her

---

[1]The district court did not ask the *Bostic* question during the sentencing hearing. *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004). Hence, "[w]e review [the] district court's sentencing determination for reasonableness under a deferential abuse-of-discretion standard," *United States v. Petrus*, 588 F.3d 347, 351 (6th Cir. 2009), and not for plain error, *United States v. Vonner*, 516 F.3d 382, 385-86 (6th Cir. 2008) (en banc).

mother when the latter tried to intervene.  Photographs of Gregory's wounds and the testimony of Officers Blanc and Miller confirmed the violent nature of this assault. Although Gregory testified that she began the fight by punching Chiolo and that she did not remember most of the day's events, the court did not find her testimony credible when compared to Gregory's and her mother's earlier police statements, both of which described a much more serious attack by Chiolo.  The court indicated that these serious and violent characteristics warranted a higher sentence than the guidelines prescribed.

Second, the court found that Chiolo had actively returned to the drug-abusing lifestyle that had brought him to prison in the first place.  Considering the prolonged attack on Gregory, the court noted Chiolo's claim "that this action against his girlfriend and/or fiancée is driven solely by anger and that he is not using any drugs, but yet he cannot explain in any way the nature of this violent assault," and concluded that "[t]here is no other explanation, at least in my mind, [there is] certainly circumstantial evidence the defendant has returned to the use of drugs."  The court also noted that Chiolo had either failed or attempted to defeat his June 12 drug test, and that $83,000 in cash had been found in Chiolo's home.  With respect to the cash, the court stated that it "has no way of knowing or ascertaining whether those are proceeds of earlier drug trafficking. . . . But if in fact it is evidence from the earlier drug transaction, it is only evidence of how extensive this defendant's drug trafficking was."  The likelihood that Chiolo had resumed the criminal activity for which he had been convicted further increased the seriousness of his actions, and the court accordingly factored this into its sentencing decision.

Third, based on its conclusions about the severity of Chiolo's offense and the likelihood that he had returned to his criminal lifestyle, the district court also reasoned that its sentence was necessary to protect Gregory and the public.  The court noted that "[t]he need for the sentence imposed is to protect the public, protect the victim," and that "I have an obligation to protect the public, make certain this defendant does not continue to engage in the drug trade."

And fourth, the court explained that Chiolo had already received substantial reductions from his earlier sentence, making it very clear that the court did not consider Chiolo worthy of leniency in his current sentence.  The court noted that Chiolo "has been given great consideration because of his cooperation.  A mandatory minimum of 120 months went to a 78-month sentence, and from there a 41-month sentence."  The court later reiterated that Chiolo "has received a substantial deduction from any earlier sentence and he does not deserve a second chance," and that "I made it clear at the time of these reductions, I think, there was no misunderstanding, supervised release and following the Court's direction and not engaging in any further misconduct would clearly be a condition of supervised release.  That has not been the case."  Imposing a sentence of thirty-seven months for Chiolo's supervised-release violation just returned him to his earlier seventy-eight-month sentence for his drug conviction.

The district court's express, multi-factor justification for Chiolo's sentence satisfies the general requirements imposed for procedural-reasonableness review.  Here, the district court's "reasoning was 'sufficiently detailed to reflect the considerations listed in [18 U.S.C.] § 3553(a) and to allow for meaningful appellate review.'"  *United States v. Lapsins*, 570 F.3d 758, 773 (6th Cir. 2009) (quoting *United States v. Mayberry*, 540 F.3d 506, 518 (6th Cir. 2008)).  This court "will vacate a sentence if the 'context and the record' do not 'make clear' the court's reasoning."  *United States v. Thomas*, 498 F.3d 336, 340 (6th Cir. 2007) (quoting *Rita v. United States*, 551 U.S. 338, 358, 359 (2007)).  The reasoning behind Chiolo's sentence could not be any clearer.

Chiolo claims that his sentence was procedurally unreasonable because the district court did not address several of his non-frivolous arguments for a within- or below-guidelines sentence.  These arguments included: (1) Chiolo could instead serve his sentence by local incarceration, electronic monitoring, or continued supervised release under more stringent conditions; (2) the domestic violence conviction represented aberrant behavior; (3) all but one of Chiolo's drug screens had been negative; (4) Chiolo had not undergone psychological counseling; (5) Chiolo is the primary caregiver for his dementia-stricken mother; and (6) Chiolo needed to participate

in an anger-management program. While it is true that the court did not expressly address these arguments, Chiolo demands a degree of formalism which the law does not require. The detailed rationale that the court gave for its sentencing decision was logically responsive to each of Chiolo's conceptually simple arguments for a lesser sentence. Hence, the district court's consideration and its reasoning for rejecting each of those arguments is apparent from the "context and the record." *Rita*, 551 U.S. at 359.

Regarding Chiolo's first leniency argument, the district court considered that the circumstances of Chiolo's supervised-release violation were much more serious than the guidelines indicated, and that he therefore deserved a greater sentence than the guidelines recommended. Inherent in this reasoning is the court's rejection of Chiolo's argument for a lesser penalty—local incarceration, electronic monitoring, or continued supervised release subject to stricter conditions—as simply inadequate given the nature of Chiolo's actions. Similarly, when the court concluded that only an enhanced sentence would adequately protect Gregory and the public from Chiolo, it necessarily concluded that a lesser sentence would not provide adequate protection. Thus, while the court did not expressly address Chiolo's argument that his conduct merited local incarceration, electronic monitoring, or stricter supervised release conditions, the obvious implication of such reasoning is that the court believed that Gregory and the public would be inadequately protected under Chiolo's proposed alternatives.

The district court's considered rejection of Chiolo's next two leniency arguments is also apparent from the record. The court explained that Chiolo had returned to his former lifestyle of crime and drug abuse. That the court placed great significance on this "recidivist evidence" necessarily implies that the court placed little or no significance on what may be called the "non-recidivist evidence"—i.e., Chiolo's arguments that his actions were "aberrational," and that the June 12 drug test was the only one he failed or sabotaged during his supervised release. Moreover, a response to Chiolo's argument that his actions should be considered "aberrational," and therefore less significant, is also logically embedded in the court's opposing view, that Chiolo's actions were very

significant. This is particularly so given the court's conclusion that the domestic violence "was not an isolated incident."

As for Chiolo's remaining three non-frivolous sentencing arguments that he claims the district court did not consider—those regarding his lack of psychological counseling, his mother's dementia, and his need to undergo anger management—the court's express reasoning logically responded to these as well. Later in the hearing, the court said that it was considering "[t]he history and characteristics of the defendant," the sentencing factor under 18 U.S.C. § 3553(a)(1). This sentencing factor encompasses Chiolo's remaining three sentencing arguments. The district court's reasoning here is analogous to that which we accepted in *Lapsins*, 570 F.3d at 774, where, "[a]lthough the district court did not specifically respond to Lapsins's arguments about his remorse, family support, substance abuse problems, and willingness to undergo counseling, these matters are encompassed within § 3553(a)(1), which requires a sentencing court to consider 'the history and characteristics of the defendant.'" By stating that it was looking to Chiolo's "history and characteristics" in making its sentencing decision, the court indicated that it was considering (and ultimately rejecting) Chiolo's three remaining leniency arguments, since those three arguments were directly based on his history and characteristics.

And as an overall matter, the district court's considered rejection of Chiolo's sentencing arguments in their entirety is evident from the court's explanation that Chiolo had already received the benefit of substantial sentencing reductions. While again not explicitly mentioning any of Chiolo's arguments, the court's reasoning for rejecting them is obvious, based on what the court expressly said about the leniency already shown Chiolo: namely, that Chiolo no longer deserved the leniency entailed by such arguments. Chiolo had been shown a great deal of mercy before with respect to his drug-conviction sentencing, presumably (at least in part) because of the very arguments he claims the district court ignored with respect to his supervised-release-violation

sentencing.**2**   The court was simply unwilling to credit Chiolo's renewed pleas for clemency, given the brutality of his actions and the notice he had that further misconduct would not be tolerated.

Hence, the district court's express sentencing rationale was logically responsive to all of Chiolo's non-frivolous sentencing arguments.  That rationale reflects the court's considered rejection of those arguments, making it unnecessary for the court to expressly confirm this through magic words like, "I have considered Chiolo's arguments and I reject them."  We do reverse when the sentencing judge fails to "set forth enough [of a statement of reasons] to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority."  *Rita*, 551 U.S. at 356.  That is clearly not the case here.  Moreover, each of Chiolo's arguments was conceptually straightforward, and an "exception to the requirement of explicit discussion applies when the defendant presents issues that are 'conceptually straightforward,' such that we may assume, even absent express analysis by the judge, that the sentence reflects consideration of the argument."  *United States v. Simmons*, 587 F.3d 348, 361 (6th Cir. 2009).  In light of these facts, "the context and the record . . . make clear the court's reasoning" in rejecting Chiolo's non-frivolous arguments, *United States v. Smith*, 505 F.3d 463, 468 (6th Cir. 2007), such that its failure to expressly address those arguments does not make its sentence procedurally unreasonable.

Our conclusion is consistent with cases in which we have vacated sentencing decisions that did not explicitly address and reject defendants' non-frivolous arguments.  *See, e.g., United States v. Wallace*, 597 F.3d 794 (6th Cir. 2010); *Thomas*, 498 F.3d 336.  In *Wallace*, the district court failed to set forth a sentencing rationale that was in any way responsive to the defendant's argument regarding the disproportion of his and his co-defendant's sentences.  *See Wallace*, 597 F.3d at 802-03.  Hence, "[o]n the transcript of

---

**2**Chiolo's earlier drug-conviction sentencing hearing apparently was not transcribed. Consequently, we cannot verify whether the district court based Chiolo's drug-conviction sentence in whole or in part on the leniency arguments Chiolo raised during his supervised-release-violation sentencing hearing.

the sentencing hearing, we simply cannot determine whether the district judge considered the disparity between Wallace's and White-Baber's sentences." *Id.* at 805. The sentencing rationale in Chiolo's case, by contrast, implicitly responds to the nature of Chiolo's non-frivolous arguments, and this is determinable from the hearing transcript. And in *Thomas*, the district court's reasoning consisted entirely of a statement that it had received, read, and understood the defendant's sentencing memorandum (which contained the defendant's unaddressed leniency arguments), as well as conclusory references to "the defendant's background and behavior in this particular case" and "the additional factors contained within 18 [U.S.C.] Section 3553(a)." *Thomas*, 498 F.3d at 339. "In such circumstances, we must conclude that the context and the record do not make clear the court's reasoning." *Id.* at 341. The district court in Chiolo's case, however, did not respond to Chiolo's arguments by simply assuring Chiolo that it had read the sentencing memorandum and by making empty, generalized references to 18 U.S.C. § 3553(a). Rather, the court responded to Chiolo's arguments with detailed, substantive reasoning that, while not explicitly mentioning Chiolo's exact arguments, nonetheless addressed and rejected the merits of those arguments by logical implication.

It is true that "the better practice . . . is for the district court to explicitly address all of the nonfrivolous arguments that a defendant raises in support of a lower sentence." *Petrus*, 588 F.3d at 353. The district court could have explicitly addressed each non-frivolous argument Chiolo offered in support of a lesser sentence. But "a district court's failure to address each argument [of the defendant] head-on will not lead to automatic vacatur . . . ." *Smith*, 505 F.3d at 468. While the district court would have done better to state on the record that it had considered Chiolo's leniency arguments and had decided to reject them specifically for the various reasons discussed above, the court's failure to take this additional step does not change the fact that in this particular case, the "context and the record make clear the court's reasoning." *See id.* "When a district court adequately explains *why* it imposed a particular sentence, especially one within the advisory Guidelines range, we do not further require that it exhaustively explain the

obverse—*why* an alternative sentence was *not* selected in every instance." *United States v. Gale*, 468 F.3d 929, 940 (6th Cir. 2006).

We caution, however, that whenever a district court requires us to infer its bases for rejecting arguments, the district court greatly increases the risk of a remand. The better practice is to give explicit reasons for rejecting all non-frivolous arguments.

The judgment of the district court is affirmed.