**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0400n.06

**No. 19-3702**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 13, 2020
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| KEITH JEFFRIES, | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: GILMAN, BUSH, and READLER, Circuit Judges.

**JOHN K. BUSH, Circuit Judge**. Keith Jeffries is a tax-return preparer who secured large refunds for clients by filing false or misleading returns on their behalf, resulting in underpayment of over $1 million. He was convicted of conspiring to defraud the United States, in violation of 18 U.S.C. § 371, and aiding the preparation and presentation of false income-tax returns, in violation of 26 U.S.C. § 7206(2). He appeals his 96-month sentence and fine of $100,000. For the reasons stated below, we **AFFIRM**.

**I.**

**A.    The Investigation**

The charges against Keith Jeffries arose from an Internal Revenue Service (IRS) investigation of a tax-return preparation service that operated under the name of "Krew Time." This business was run by Tomica Jeffries, who filed a joint return with Keith Jeffries. The latter and two employees prepared most of the returns for Krew Time's clients.

An IRS review of returns prepared by Krew Time showed several suspicious patterns as compared to returns prepared by other providers. Linda Essler, an IRS analyst, observed that in tax years 2014 and 2015, taxpayers who had their returns prepared by Krew Time had a 100 percent and 99 percent refund rate, respectively. Further investigation revealed that all of Krew Time's clients received refunds in 2012 and 2013.

These findings prompted Essler to review individual returns prepared by Krew Time. She found other indications that the returns were fraudulent. For example, more than 100 of Krew Time's clients claimed deductions for medical and dental expenses, which is a deduction that few taxpayers receive because those expenses must be greater than ten percent of their adjusted gross income. Many returns also claimed the Earned Income Tax Credit and income from self-employment on Schedule C without any supporting documentation.

### B. The Trial

The proof at trial included testimony from thirteen of Jeffries's former clients and two former Krew Time employees. Their stories all shared a common theme. Each of the former clients testified that Jeffries or other Krew Time employees provided significantly inflated or false deductions on their tax returns. Take, for example, Clarence Strong, who hired Jeffries to prepare his tax returns in 2012 and 2013. When Jeffries prepared Strong's 2011 return, he asked whether Strong had attended college. Although Strong told Jeffries that he had not, Jeffries claimed a $4,000 educational expense deduction on Strong's return, resulting in a $1,000 credit. On Strong's 2012 return, Jeffries included deductions of $12,852 for medical and dental expenses, $4,040 for charitable gifts by cash or check, $500 for other charitable contributions, and $6,374 for unreimbursed employee expenses. Strong testified that all of these amounts were false, and that he had never incurred such expenses. Similarly, for Strong's 2013 return, Jeffries claimed $10,257

for medical expenses, $4,073 for various charitable contributions, and $7,881 for unreimbursed employee expenses, all of which were false. Twelve other former clients provided similar testimony that Jeffries or his employees prepared their returns with false or inflated deductions.

Two Krew Time employees testified that it was standard business practice to inflate or falsify deductions on customers' returns. Brian Peacock, who began working at Krew Time in 2013, testified that Jeffries instructed him to claim the maximum education deduction on clients' tax returns, regardless of whether the deduction was warranted. When clients had not earned enough income to qualify for the maximum tax credit, he would nonetheless prepare their returns so they would receive the maximum refund.

Similarly, Linette Coleman, who started at Krew Time in 2012, testified that when clients were disappointed that their refunds were significantly lower than the refunds they had received in prior years, Jeffries would change the numbers in their returns without talking to the client or reviewing any documentation. By observing Jeffries and reviewing the changes he made to those clients' tax returns, Coleman learned how to manipulate the numbers to generate a larger refund for Krew Time clients. One way to ensure that clients received the maximum refund, Coleman testified, was to claim that each client had $4,000 in qualifying educational expenses, regardless of whether the client had any such expenses.

IRS Revenue Agent James Fisher reviewed selected returns prepared by Krew Time. Based on the taxpayers' testimony, interview summaries, and documentation, he recalculated their returns and found that the total tax due but not reported as a result of Krew Time's misconduct was over $300,000.

At the conclusion of the proof, the district court dismissed Counts II, IX, and XI on the government's motion. The jury returned a guilty verdict on Count I (conspiring to defraud the

United States), and Counts III–VIII and X (aiding the preparation and presentation of false income tax returns).

After the jury returned its verdict, Jeffries had surgery to alleviate the symptoms of his Crohn's disease. A witness notified the IRS that Jeffries was preparing false tax returns from the hospital and while in recovery at his home. He did so by making it appear that the clients had prepared the returns themselves. Jeffries told this witness that he was preparing the returns in this manner because he was no longer permitted to prepare returns himself. Those returns had the same sort of fraudulent refund claims as the returns for which he was convicted.

### C. Sentencing

At Jeffries's sentencing hearing, the government provided evidence that Jeffries had been preparing false returns for clients while he was on release pending sentencing. Namely, the government provided evidence that approximately 100 of Jeffries's clients had filed paper returns by mail while Jeffries was awaiting sentencing.

The base guideline level for Jeffries's conviction under Counts III–VIII and X (violation of 26 U.S.C. § 7206(2)) was 20. Because Jeffries was in the business of preparing or assisting in the preparation of tax returns, he received a two-level enhancement, and because he was the leader of a criminal activity involving five or more participants, his base level was enhanced by four. Also, because of Jeffries's six prior convictions—four for marijuana possession, one for perjury, and one for permitting drug abuse—he was in criminal history category III. Altogether, Jeffries's total offense level was 26 and his criminal history category was III, resulting in a range of 78–97 months' imprisonment. The Probation Office assumed that Jeffries would be required to pay $1.4 million in restitution, which reflected the total amount of tax underpayment caused by his scheme.

However, because the restitution amount could only be for the counts for which Jeffries was convicted, the amount was set at $310,401.

Jeffries requested a downward departure or variance, citing his history of severe Crohn's disease and his marijuana addiction, all the while maintaining his innocence. The district court rejected Jeffries's request for a downward departure or variance, sentenced him to 96 months' imprisonment with three years of supervised release, imposed a $100,000 fine, and ordered restitution in the amount of $310,401. Jeffries filed this timely appeal.

## II.

Jeffries raises three arguments on appeal. First, he argues that the government did not produce sufficient evidence to convict him of the offenses for which he was charged. Second, he maintains that his 96-month sentence is substantively unreasonable because of his chronic health problems and marijuana addiction. Finally, he argues that the district court erred by imposing a $100,000 fine that was not recommended in his presentence report. For the reasons discussed below, we **AFFIRM** the district court in full.

### A.      Sufficiency of the Evidence

"We review a challenge to the sufficiency of the evidence supporting a criminal conviction de novo." *United States v. Collins*, 799 F.3d 554, 589 (6th Cir. 2015) (citing *United States v. Pritchett*, 749 F.3d 417, 430 (6th Cir. 2014)). "A defendant challenging the sufficiency of the evidence 'bears a very heavy burden.'" *Id.* (quoting *United States v. Davis*, 397 F.3d 340, 344 (6th Cir. 2005)). In evaluating a sufficiency challenge, we determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S.

307, 319 (1979). We "neither independently weigh[] the evidence, nor judge[] the credibility of witnesses who testified at trial." *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999).

Jeffries was convicted on Count I for conspiring to defraud the United States, in violation of 18 U.S.C. § 371. To establish a conspiracy under § 371, the government must show that (1) two or more persons agreed to defraud the United States by dishonest means, (2) Jeffries knowingly and voluntarily joined the conspiracy, and (3) a member of the conspiracy did one of the overt acts described in the indictment (4) for the purposes of advancing the conspiracy. *See United States v. Damra*, 621 F.3d 474, 498 (6th Cir. 2010) (quoting *United States v. Beverly*, 369 F.3d 516, 532 (6th Cir. 2004)).

Jeffries was convicted on Counts III–VIII and X for aiding and assisting in the preparation and presentation of false and fraudulent tax returns, in violation of 26 U.S.C. § 7206(2). An offense under § 7206(2) requires three elements. First, the defendant must have "aided, assisted, procured, counseled, advised or caused the preparation and presentation of a return." *United States v. Goosby*, 523 F.3d 632, 637 (6th Cir. 2008) (quoting *United States v. Sassak*, 881 F.2d 276, 278 (6th Cir. 1989). Second, the return must have been materially false or fraudulent. *Id.* Third, the defendant's act must have been willful. *Id.*

Jeffries argues that the government did not produce evidence sufficient to sustain his conviction because the former clients who testified "had a personal animus against Jeffries," and former employees "who, with cooperation by the government, hoped to reduce their own liability and potential sentences," gave false and misleading testimony. Appellant's Br. at 12–13.

Each of these arguments is, at bottom, asking us to overturn the jury's verdict because Jeffries claims the government's witnesses were not credible. But all credibility determinations "must be resolved in favor of the jury's verdict." *Collins*, 799 F.3d at 589 (citing *United States v.*

*Salgado*, 250 F.3d 438, 446 (6th Cir. 2001)); *see United States v. Beverly*, 369 F.3d 516, 532–33 (6th Cir. 2004).

At trial, over a dozen former clients gave testimony that Jeffries prepared their tax returns using false information. Many testified as to the falsity of deductions that Jeffries claimed on their returns—for things such as medical expenses, unreimbursed employee expenses, and education expenses. Taxpayers who received the Earned Income Tax Credit, and whose returns had a Schedule C, consistently testified that they did not provide Jeffries with receipts of their expenses, and that the amounts listed on their returns were often incorrect.

Two of Jeffries's employees at Krew Time, Linette Coleman and Brian Peacock, both testified that Jeffries taught them how to prepare false tax returns for their clients. Jeffries taught them to claim the maximum educational credit for any client who attended school, regardless of the client's actual expenses. Coleman and Peacock further testified that when clients were dissatisfied with the refunds that they received when Coleman and Peacock prepared their returns, the clients would then take the returns to Jeffries, who changed the numbers to generate higher refunds.

Jeffries tries to overcome this evidence by noting that the former clients who testified were not tax experts and therefore could not know if the entries on their tax returns were false. Although it may be true that many of Jeffries's former clients did not know that the information Jeffries entered into their tax returns was false, that has no bearing on his conviction on Counts III–VIII and X for aiding and assisting in the preparation and presentation of false and fraudulent tax returns. The elements of that offense only require that Jeffries knew that the information was false.

Jeffries also argues that his conviction should be overturned because the former employees who testified "fabricated their testimony to cooperate with the Government," Appellant's Br. at

16, pursuant to their plea deals. The jury heard from two of the former employees about the favorable plea deals they received in return for their testimony against Jeffries. "Bias is . . . relevant in assessing a witness's credibility." *United States v. Sumlin*, 956 F.3d 879, 890 (6th Cir. 2020) (quoting *Schledwitz v. United States*, 169 F.3d 1003, 1015 (6th Cir. 1999)). But such credibility determinations "must be resolved in favor of the jury's verdict." *Collins*, 799 F.3d at 589.

The jury obviously accepted the testimony of the former clients and employees, which is more than sufficient to sustain Jeffries's conviction.

### B.        Substantive Reasonableness of the Sentence

We review the substantive reasonableness of a sentence imposed for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Dunnican*, 961 F.3d 859, 880 (6th Cir. 2020). For sentences within the Guidelines, we may apply a rebuttable presumption of substantive reasonableness. *Gall*, 552 U.S. at 51. In evaluating a substantive-reasonableness claim, we focus on whether the length of the sentence is greater than necessary to achieve the goals of 18 U.S.C. § 3553(a). *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010).

Prior to handing down the sentence, the district court considered the nature and circumstances of Jeffries's offense, his personal history and characteristics, his medical history, and the other § 3553(a) factors. The district court also considered Jeffries's prior criminal history and his participation in the crime charged. Based on the § 3553(a) factors, the district court imposed a within-guidelines sentence of 96 months.

Jeffries argues that the district court gave too much weight to his prior criminal history and too little weight to his medical condition. With regard to the former consideration, the district court noted that because this conviction was Jeffries's first felony conviction, it might warrant a below-guidelines sentence. However, the district court found that because Jeffries's prior drug

convictions all involved marijuana possession, and because he continued to prepare false tax returns while awaiting sentencing, the district court had "seen nothing in the trial that would indicate the defendant is nothing other than someone who will continue with the same pattern he's engaged in now for quite some time." R. 158 at PageID 918. Given these facts—which Jeffries does not challenge on appeal—the district court did not give undue weight to his prior criminal history.

Nor did the district court abuse its discretion in not departing from the Guidelines because of Jeffries's medical condition. The district court specifically addressed why it rejected this request. Specifically, the district court noted that Jeffries perpetrated his tax-fraud scheme despite having Crohn's disease, and continued to file false returns both while recovering from surgery and when he was awaiting sentencing. Jeffries submitted a note from his physician saying that he underwent surgery on February 12, 2019, and his physician requested that the court delay incarcerating Jeffries until four to six weeks after a follow-up procedure, which was scheduled for April 30, 2019. The district court did so.

In all, the district court gave significant consideration to Jeffries's medical condition. The district court delayed Jeffries's sentencing and incarceration for several months to allow him to obtain medical treatment. The district court weighed this mitigating factor against the other § 3553(a) factors and determined a sentence on the high-end of the Guidelines was appropriate. Although Jeffries claims that his medical condition should have trumped the other factors, the district court was not required to explain why it did not impose a lesser sentence.[1] *See United*

---

[1] To the extent that Jeffries is challenging the district court's decision not to grant a downward variance or departure, we have no authority to review a district court's denial of a downward departure "unless the district court incorrectly believed that it lacked discretion to depart downward." *United States v. Carter*, 510 F.3d 593, 600 (6th Cir. 2007) (citing *United States v. Puckett*, 422 F.3d 340, 344–46 (6th Cir. 2005)). Here, the district court recognized its discretion to grant a downward departure but declined to do so.

*States v. Chiolo*, 643 F.3d 177, 185 (6th Cir. 2011) (noting that when "the context and the record make clear the court's reasoning" a sentencing court is not required to "state on the record that it had considered [petitioner's] leniency arguments" (quoting *United States v. Smith*, 505 F.3d 463, 468 (6th Cir. 2007))).

Because the district court weighed the relevant § 3553(a) factors and then imposed a sentence within the Guideline range, it did not abuse its discretion.

**C.      Reasonableness of the Fine**

Because Jeffries did not object to the fine during the sentencing phase at the district court, we review the district court's decision to impose a fine for plain error. *United States v. Lumbard*, 706 F.3d 716, 720 (6th Cir. 2013). This requires Jeffries to show (1) error that was (2) obvious or clear, (3) affected his substantial rights, and (4) affected the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008). "Only where the error is so plain that the trial judge . . . [was] derelict in countenancing it" will we find plain error in a district court's sentencing decision. *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006).

Jeffries has not made that showing. When determining whether, and for what amount, to impose a fine, the district court should consider, among other things, (1) the defendant's income and earning capacity, (2) his financial resources, (3) the burden on the defendant and his dependents, (4) whether restitution is ordered and its amount, (5) the need to deprive the defendant of illegal gains, and (6) the need to promote respect for the law. 18 U.S.C. § 3572(a); U.S.S.G. § 5E1.2(d); *United States v. Tosca*, 18 F.3d 1352, 1354 (6th Cir. 1994). The Sentencing Guidelines state that a district court "shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine."

U.S.S.G. § 5E1.2(a).  The burden is on Jeffries to establish that he is unable to pay the fine.  *Tosca*, 18 F.3d at 1354 .

Although the Probation Office did not believe that Jeffries could afford a fine (based on its erroneous conclusion that Jeffries would be required to pay $1.4 million in restitution), the district court was free to reject that finding.  *See United States v. Guthrie*, 144 F.3d 1006, 1012 (6th Cir. 1998) (noting that "[a] district court is always free to accept or disregard a probation officer's findings in a presentence investigation report").  After finding that Jeffries had a net worth of approximately $153,000, including his residence, two cars, and a business, with a monthly cash flow of approximately $1,840 each month, the district court decided to impose a within-Guidelines fine of $100,000.  Because the district court adequately considered the statutory factors and imposed a fine within the Guideline range of $25,000–$250,000, Jeffries has shown no error, plain or otherwise.

**III.**

For the reasons discussed above, we **AFFIRM** the judgment of district court in full.