NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0182n.06

No. 24-5300

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 21, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE WESTERN DISTRICT OF |
| | ) | TENNESSEE |
| MARTEZ DEANGELO WRIGHT, | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: SUTTON, Chief Judge; CLAY and MURPHY, Circuit Judges.

MURPHY, Circuit Judge. Confidential informants repeatedly recorded Martez Wright while he engaged in drug and firearm transactions. After a jury convicted him for these crimes, the district court imposed a sentence at the bottom of his guidelines range: 360 months' imprisonment. Wright now claims that the admission at trial of out-of-court statements in the recordings violated the Confrontation Clause. He also claims that the district court did not adequately explain why it rejected his request for a variance from his guidelines range. But he preserved neither argument, so we must review both for plain error. And the district court did not commit an obvious error by concluding that the government introduced the challenged out-of-court statements for a purpose that did not implicate the Confrontation Clause. It likewise did not commit an obvious error by concluding that its general explanation for its sentence adequately responded to Wright's arguments in favor of a variance. We thus affirm.

I

In 2017, officers began to investigate Wright for distributing drugs in Memphis, Tennessee. After Wright moved to a new home in Memphis the next year, the investigation centered on this location. Officers repeatedly coordinated with confidential informants to buy drugs from Wright at his home between March and August 2018. The first informant participated in buys on March 15, March 28, April 12, April 25, June 7, and July 19. He secretly recorded each drug deal.

Erica Roberts and her boyfriend, Russell House, also transacted with Wright around the same time. During one exchange on August 17, they bought a couple grams of heroin and a pistol from Wright. Roberts and House secretly recorded this encounter too.

Ultimately, the government obtained an 11-count indictment against Wright. The indictment alleged that Wright conspired to distribute heroin from July 2017 to December 2018. It also charged him with seven distribution offenses for the controlled buys from March 15 to August 17, 2018. And it charged Wright with one felon-in-possession count and one count of carrying a firearm during a drug-trafficking crime for his sale of the pistol on August 17. Lastly, it alleged that Wright unlawfully possessed other firearms several months later.

Wright stood trial. A jury convicted him of all eight drug counts and the two gun counts tied to the August 17 transaction with Roberts and House. But it acquitted him of the final gun count.

At sentencing, the district court rejected Wright's claim that he did not qualify as a career offender under the Sentencing Guidelines. This conclusion produced a guidelines range of 360 months to life imprisonment. The court chose a total sentence for all of Wright's convictions that fell at the bottom of this range: 360 months' imprisonment. Wright appealed.

II

Wright raises both a constitutional challenge to his convictions and a procedural challenge to his sentence. Neither has merit.

A

Wright first argues that the government violated the Confrontation Clause by introducing into evidence some of House's out-of-court statements from the recordings of the gun and drug transaction on August 17. To explain why this argument fails, we begin with the background. The government introduced the recordings at trial through Roberts's testimony. House did not testify.

The first recording played a call between Roberts and Wright. On this call, Roberts asked Wright: "Can I come and talk to you about a gun real quick?" Ex. 48, at 2:08–:11. Wright agreed.

The second recording memorialized Roberts and House's conversation with Wright after they arrived at his home. House first asked Wright if he had a gun and two grams of heroin that Roberts and House could buy. House made up a story about why they needed the gun: a friend wanted to buy one for $350, and they hoped to make $150 on the deal. Wright did not have a gun at his home, so he called a third party. Roberts and House waited for this person. When a "very young" man arrived, he gave the pistol to Wright. Roberts Tr., R.250, PageID 1966. Roberts saw Wright holding the gun.

At this point, House and Wright engaged in the discussion that Wright now partially challenges. House said: "There it is." Ex. 49, at 17:20–:21. Wright then pointed out that "[t]here's one in the head too" (presumably meaning a bullet in the chamber). *Id.* at 17:22–:24. This statement led House to ask: "There's one in the head too?" *Id.* at 17:24–:25. House next questioned whether the gun had an "extended clip." *Id.* at 17:34–:35. Roberts intervened to say that it did. Lastly, House asked Wright: "You got something like a t-shirt or something I could

3

put [the pistol] in?" *Id.* at 17:40–:42. Wright gave him a shirt to conceal the weapon. House and Roberts subsequently left Wright's home. They drove to meet with law enforcement and handed over the gun and drugs that they had just obtained.

At trial, Wright raised a hearsay objection to the use of House's initial statements about why they had wanted to buy a gun. The government responded that House's statements did not qualify as hearsay under the Federal Rules of Evidence because House had come up with a "manufactured story" that the government did not offer for its truth. Roberts Tr., R.250, PageID 1963. As a result, Wright asked for a limiting instruction telling the jury that it could not consider House's statements for their truth. Wright raised no other objections to those statements and never invoked the Confrontation Clause.

On appeal, therefore, Wright concedes that his failure to object on Confrontation Clause grounds requires us to review his challenge under the demanding "plain-error" test. *United States v. Burrell*, 114 F.4th 537, 554 (6th Cir. 2024). He must establish, among other things, that the district court committed an "obvious" constitutional mistake when admitting the challenged statements. *United States v. Holt*, 116 F.4th 599, 613 (6th Cir. 2024) (citation omitted). He has failed to satisfy this part of the plain-error test.

A criminal defendant has the right "to be confronted with the witnesses against him" under the Sixth Amendment's Confrontation Clause. U.S. Const. amend. VI. This text applies only to "witnesses"—namely, "those who 'bear testimony.'" *Crawford v. Washington*, 541 U.S. 36, 51 (2004) (quoting 2 Noah Webster, *An American Dictionary of the English Language* (1828)). It thus restricts the government's ability to introduce testimonial statements "made for the purpose of establishing or proving some fact." *Id.* (citation omitted).

But the Court has adopted "two limits" on the scope of the clause's protections. *Smith v. Arizona*, 602 U.S. 779, 784 (2024). To start, the clause does not regulate nontestimonial statements that a declarant makes for some purpose other than proving a fact. *See id.* at 784–85. The Supreme Court has articulated the test to distinguish testimonial from nontestimonial statements in different ways. *See id.*; *United States v. Miller*, 982 F.3d 412, 436 (6th Cir. 2020). But the differences do not matter here. Next, even if a statement falls on the testimonial side of this line, the clause does not regulate testimonial statements that the prosecution introduces at trial for a purpose other than "to prove the truth of the matter asserted." *Smith*, 602 U.S. at 785 (quoting *Anderson v. United States*, 417 U.S. 211, 219 (1974)). For example, if the government uses the statements "to give context" to a defendant's own admissible speech (rather than to prove their truth), the admission of the statements does not violate the Confrontation Clause. *United States v. Harrison*, 54 F.4th 884, 887 (6th Cir. 2022); *see also Reed v. May*, 134 F.4th 455, 460–61 (6th Cir. 2025).

The parties disagree over only the second of these limits in this case. The government does not dispute (and so we may assume) that House, as a confidential informant, made testimonial statements when he interacted with Wright. *Cf. Harrison*, 54 F.4th at 887. But the government does claim that it used House's testimonial statements "for purposes other than establishing the truth of the matter asserted." *Smith*, 602 U.S. at 793 (quoting *Crawford*, 541 U.S. at 60 n.9). Wright, on the other hand, claims that four of House's statements "were used for their truth" by the government. Appellant's Br. 15; Reply Br. 1. We side with the government in this debate— at least when we review the statements under the governing plain-error test. Wright has not shown that it was "obvious" that the government used the four challenged statements to prove their truth. *Holt*, 116 F.4th at 613 (citation omitted). We will take each statement in turn.

5

*First*, Wright points to a conversation about whether the pistol had a bullet in the chamber. But he misunderstands House's part of this conversation. When House received the firearm, Wright himself volunteered: "There's one in the head too." Ex. 49, at 17:22–:24. House then restated Wright's own comment in the form of a question: "There's one in the head too?" *Id.* at 17:24–:25. As Roberts testified, the two men were "talking about the gun being fully loaded with one in the chamber." Roberts Tr., R.250, PageID 1973. Wright does not dispute that the government could use his *own* statement for its truth. *See United States v. Jones*, 205 F. App'x 327, 342–43 (6th Cir. 2006) (per curiam). And the district court could have reasonably found that the government did not introduce House's responding *question* for the same purpose. In fact, we have repeatedly recognized that litigants do not introduce questions for their truth because they are not "assertive speech"—that is, speech that conveys a "proposition that could be true or false." *United States v. Rodriguez-Lopez*, 565 F.3d 312, 314 (6th Cir. 2009); *see United States v. Blake*, 166 F.4th 611, 620 (6th Cir. 2026); *United States v. Moore*, 810 F. App'x 411, 413 (6th Cir. 2020).

*Second*, Wright highlights House's question about whether Wright had "something like a t-shirt" that he could use to hide the pistol. Ex. 49, at 17:40–:42. But again, House's statement about the t-shirt "took the form of" a question. *Moore*, 810 F. App'x at 413. So the district court likewise could have reasonably found that the government did not admit it for its truth.

*Third*, Wright turns to the part of the conversation about the "extended clip" with the pistol. Ex. 49, at 17:34–:35. House appeared to ask Wright: "Is that an extended clip?" *Id.* Roberts (rather than Wright) responded that it was. Wright does not challenge the admission of Roberts's out-of-court response because the government made her available for "cross-examination" at his trial. *Crawford*, 541 U.S. at 60 n.9. And for a third time, because House seemed to make his statement in "the form of" a question, the district court could again have reasonably concluded that

the government did not offer it for its truth. *Moore*, 810 F. App'x at 413. Wright retorts that "it is not clear" from the audio whether House asked a question or made a comment. Reply Br. 2. But this concession about the lack of clarity all but forecloses his claim on plain-error review. It confirms that the government did not "obvious[ly]" introduce the statement for the truth. *Holt*, 116 F.4th at 613 (citation omitted).

*Fourth*, and finally, Wright identifies at least one statement that was unambiguously not a question. After the young man handed the pistol to Wright, House said: "There it is." Ex. 49, at 17:20–:21. According to Wright, the government introduced this statement for the truth to "affirmatively identify[] the gun at issue." Reply Br. 2. Still, the district court could have reasonably found this comment admissible for a different reason. The comment could have provided "context" to Wright's "own statements" about the gun. *United States v. Jaffal*, 79 F.4th 582, 598 (6th Cir. 2023); *see United States v. Wise*, 2025 WL 3285648, at *3 (6th Cir. Nov. 25, 2025); *Harrison*, 54 F.4th at 887; *United States v. Sian*, 756 F. App'x 587, 590 (6th Cir. 2018). Indeed, the statement would do little to prove the truth of anything *by itself*. The jury would have had no idea what House meant by the pronoun "it" without listening to Wright's own comments.

All told, Wright has failed to establish that the admission of any of House's out-of-court statements "obvious[ly]" violated the Confrontation Clause. *Holt*, 116 F.4th at 613 (citation omitted). His claim thus cannot survive the plain-error test.

B

Wright next challenges his 360-month sentence as procedurally unreasonable. He argues that the district court failed to adequately consider several arguments in support of a variance below the guidelines range. Yet, after the district court asked the parties if they had any objections to its chosen sentence, Wright did not raise this challenge. So we must again review his argument

using the plain-error test. *See United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc). And Wright has again failed to show any "obvious" mistake. *Id.* at 386 (citation omitted).

When choosing a defendant's sentence, a district court must consider the sentencing factors in 18 U.S.C. § 3553(a). And once it has done so, it must "state in open court the reasons" for its sentence. *Id.* § 3553(c). The Supreme Court has read this statutory mandate to give district courts discretion over how much to say based on their "professional judgment." *Rita v. United States*, 551 U.S. 338, 356 (2007). According to the Court, sentencing courts generally must create a fulsome enough record that a reviewing court can have confidence that they "reasoned" through the parties' arguments. *Id.* Applying this rule, we have held that district courts must evaluate all arguments in support of a lower sentence that are sufficiently specific and not frivolous. *See, e.g.*, *United States v. Haile*, 157 F.4th 820, 831 (6th Cir. 2025); *United States v. Sweeney*, 891 F.3d 232, 239 (6th Cir. 2018). So when the record has left unclear why a court rejected a particular argument, we have sometimes remanded for resentencing. *See, e.g.*, *United States v. Wallace*, 597 F.3d 794, 803–05 (6th Cir. 2010); *United States v. Gapinski*, 561 F.3d 467, 474–75 (6th Cir. 2009); *United States v. Thomas*, 498 F.3d 336, 340–41 (6th Cir. 2007).

But one should not overread this rule. We do not require sentencing courts to issue lengthy opinions that engage in a "point-by-point" rebuttal of every sentencing argument. *Haile*, 157 F.4th at 831 (quoting *Sweeney*, 891 F.3d at 239). The record must make clear only that the court *considered* the defendant's arguments; it need not contain an *express* rejection of those arguments. *See id.*; *United States v. Chiolo*, 643 F.3d 177, 183 (6th Cir. 2011); *Vonner*, 516 F.3d at 386–87. If, for example, a court's general statements in support of its sentence "logically responded" to a defendant's specific arguments, it does not matter that the court did not "explicitly mention[]" those arguments when sentencing the defendant. *Chiolo*, 643 F.3d at 183.

The district court here did not commit an "obvious" "error" by concluding that it said enough in response to the two arguments that Wright claims it overlooked. *Vonner*, 516 F.3d at 386 (citation omitted). *First*, Wright argues that the district court did not adequately explain why it rejected his request for a variance based on his career-offender designation. That designation boosted Wright's guidelines range to 360 months to life imprisonment. But Wright reasons that several mitigating factors show that he does not qualify as the typical career offender. For one thing, he barely qualified for this career-offender designation with the minimum of two eligible prior offenses. For another, he committed one of those two offenses while he was still an impressionable juvenile. For a third, his second offense involved marijuana—a type of crime that he says the authorities do not regularly prosecute today.

But it is safe to say that the district court "considered" Wright's mitigating factors when picking its sentence. *Haile*, 157 F.4th at 831 (citation omitted). Wright's sentencing took an unusually long time (some 18 months) because the district court exercised great care when deciding whether to impose the career-offender designation. Across multiple briefings and hearings, Wright argued that the enhancement should not apply for the same reasons he now offers. This extensive record "no doubt" alerted the court that Wright committed his first offense as a juvenile and that his second offense involved marijuana. *Id.*; *see also United States v. Brandon*, 736 F. App'x 573, 576 (6th Cir. 2018). At the final sentencing hearing, moreover, the court explained that it had "gone back through and parsed very carefully" his arguments about his youth and marijuana conviction. Sent. Tr., R.270, PageID 2667, 2669, 2675–76. And the court's reasoning for imposing a 360-month term "logically responded" to Wright's claim that he should get a variance because of the nature of his prior convictions. *Chiolo*, 643 F.3d at 183. The court explained, among other things, that Wright is "a dangerous individual" because he committed

many crimes apart from the two that triggered the career-offender designation, so his "record reflects a lack of respect for the law[.]" Sent. Tr., R.270, PageID 2682.

Wright counters that the district court's *express* analysis of his prior offenses addressed only the "separate" question whether those offenses triggered the career-offender designation. Reply Br. 7. It is true that the district court did not explicitly discuss whether the same arguments provided a basis for a variance. Yet the court "listened to" Wright's youth- and marijuana-related arguments and took them "into account" at sentencing. *Haile*, 157 F.4th at 831 (citation omitted). Our cases do not require more. *See id.* Besides, the court explained that it gave Wright's alternative proposals for different below-guidelines sentences "close consideration" and found them inadequate because of his current crimes and his "history and characteristics." Sent. Tr., R.270, PageID 2681–82. It thus reasonably (if implicitly) found that Wright's arguments about the nature of his prior crimes carried no more weight in the variance context than they did in the guidelines-calculation context.

*Second*, Wright argues that the district court did not adequately explain why it rejected his claim that his age at sentencing (40 years old) justified a lower sentence. As Wright sees things, recidivism rates drop sharply when defendants turn 50 and so older defendants do not need lengthy sentences to protect the public from future crimes. Yet the district court's "rationale" for its sentence "logically respond[ed]" to this claim. *Chiolo*, 643 F.3d at 184. Even if the "*average*" offenders commit fewer crimes as they age, "sentencing mandates individualized assessments." *United States v. Williams*, 287 F. App'x 476, 478 (6th Cir. 2008). And the court expressed concern that Wright's crimes had not declined over time, showing that his prior punishments had not "effective[ly]" deterred him. Sent. Tr., R.270, PageID 2680.

For both of these claims, Wright points to three of our prior precedents. *See Wallace*, 597 F.3d at 803–04; *Gapinski*, 561 F.3d at 474–76; *Thomas*, 498 F.3d at 340–41. Yet he overreads the holdings of these cases. *Cf. Brandon*, 736 F. App'x at 576. In each one, we held that the record left unclear whether the district court "adequately considered" the defendant's reasons for a lower sentence. *Gapinski*, 561 F.3d at 474. In *Gapinski*, the court overlooked the defendant's substantial assistance to the government. *See id.* at 474–77. In *Wallace*, it overlooked a codefendant's sentence. *See* 597 F.3d at 803–04. And in *Thomas*, it overlooked all the defendant's arguments because it provided no explanation for its sentence. *See* 498 F.3d at 341. The district court here, by contrast, did not make these mistakes. Its extended sentencing process showed careful attention to Wright's arguments. It simply found them unpersuasive—as it was entitled to do.

We affirm.